John A. Vogt (State Bar No. 198677)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
(T) 949-851-3939
(F) 949-553-7539
javogt@jonesday.com

Attorneys for Defendant
Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELETTRA MEEKS, JOSEPH DELACRUZ, STEPHANIE LAGUNA, AMBER LEONARD, and BECKY WITT, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.: MIDWEST RECOVERY SYSTEMS, LLC; and CONSUMER ADJUSTMENT COMPANY, INC.,

Defendants.

Case No. 3:21-cv-03266-VC

Assigned to: Judge Vince Chhabria

**DECLARATION OF DAVID WILLIAMS IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

Date: July 29, 2021
Time: 10:00 a.m.
Place: Courtroom 4

**DECLARATION OF DAVID WILLIAMS**

I, David Williams, declare and state:

1. I am over the age of 18 years old. I am the VP, Business Governance for ConsumerInfo.com, Inc. ("CIC") in Costa Mesa, California. CIC also does business as Experian Consumer Services ("ECS"). I have been employed by CIC since June of 2001. I make this declaration in support of Experian Information Solutions, Inc.'s Motion to Compel Arbitration. My duties at CIC throughout the course of my employment require that I be familiar with, among other things, the marketing, advertising and sales of CIC consumer credit products, including services that consumer enroll in at Experian websites, as well as the Terms of Use governing such services. Except where otherwise stated, the facts stated in this Declaration are of my own personal knowledge, including knowledge acquired in the course and scope of my job responsibilities and through the review of pertinent documents maintained as business records by CIC in the course and scope of CIC's business, documents relating to CIC's internet advertising, and documents relating to sales of CIC's credit products and services. If called upon to do so, I could and would competently testify to the facts stated below.

2. CIC/ECS is an affiliate of Experian Information Solutions, Inc. ("EIS"), the named defendant in the above-captioned lawsuit. CIC and EIS are both wholly-owned subsidiaries of Experian Holdings, Inc., and the parent company is Experian plc. In this Declaration, I refer to Experian collectively as CIC, ECS, and EIS.

**I. FACTS PERTAINING TO ELETRRA MEEKS**

3. On November 2, 2018, Ms. Meeks enrolled in CreditWorks℠—a free online credit monitoring service that is offered by Experian. In order to successfully enroll, Ms. Meeks had to complete two webforms. The first form required Ms. Meeks to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she did so, Ms. Meeks had to click the "Submit and Continue" button on the form to continue with the enrollment process. A true and correct representation of the first webform as it would have appeared when Ms. Meeks enrolled in CreditWorks℠ is attached as **Exhibit 1** to this Declaration. Ms. Meeks clicked the "Submit and Continue" button, and was presented with a second form to complete. I know this to be the case

because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button.

4. The second webform required Ms. Meeks to enter her social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure:




A true and correct representation of the second webform as it would have appeared when Ms. Meeks enrolled in CreditWorks℠ is attached as **Exhibit 2** to this Declaration. The phrase "**Terms of Use Agreement**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "**Terms of Use Agreement**." When a consumer clicked on the **Terms of Use Agreement**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure containing the full-text hyperlink to the Terms of Use Agreement

was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage. After entering her information, Ms. Meeks clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Ms. Meeks enrolled in CreditWorks℠ is attached as **Exhibit 3** to this Declaration.

5. On July 11, 2020, Ms. Meeks activated the "Boost" feature on her account. In order to do so, Ms. Meeks was required re-affirm her consent to the Terms of Use by clicking the "Let's Go" button on the website:




A true and correct representation of the webform that would have been presented to Ms. Meeks to add the "Boost" feature to her CreditWorks℠ subscription is attached as **Exhibit 4** to this Declaration. The phrase "**Experian Terms of Use**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Experian Terms of Use" in the disclosure was a full text hyperlink to the Terms of Use.

Thus, before clicking the "Let's Go" button, the consumer could view the entire text of the Terms of Use by clicking on the blue-highlighted hyperlink "**Experian Terms of Use**." When a consumer clicked on the "**Experian Terms of Use**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Ms. Meeks clicked on the "Let's Go" button, thereby accepting and re-agreeing to the Terms of Use. I know this to be the case because she would not have been able to successfully add the "Boost" feature to her CreditWorksSM subscription unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Ms. Meeks added the "Boost" feature to her CreditWorksSM subscription is attached as **Exhibit 5** to this Declaration.

6. The Terms of Use Agreement that was in effect when Ms. Meeks enrolled in CreditWorksSM, and all subsequent amended Terms of Use Agreements applicable to her account, had a section entitled, "Amendments," which advised Ms. Meeks that she would be bound by the then-current Terms of Use Agreement each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement. Since enrolling in CreditWorksSM, Ms. Meeks has continuously used her subscription service, including after the current version of the Terms of Use came into effect. A true and correct copy of the current (operative) Terms of Use is attached as **Exhibit 6** to this Declaration.

7. The Terms of Use Agreement that was in effect when Ms. Meeks enrolled in CreditWorksSM, and all subsequent amended Terms of Use Agreements applicable to her account, had a provision that allowed her to opt-out of changes to the contract's arbitration clause. Based upon Experian's business records, Experian has no record of Ms. Meeks ever rejecting any amendment to the arbitration clause in the Terms of Use Agreement.

8. Before filing this lawsuit on May 4, 2021, Ms. Meeks continuously used her CreditWorksSM subscription including, among other things, to obtain reports that would have shown how the loans at issue in this case were reporting in her Experian credit file.

## II. FACTS PERTAINING TO AMBER LEONARD

9. On June 1, 2019, Ms. Leonard enrolled in CreditWorks℠. In order to successfully enroll, Ms. Leonard had to complete two webforms. The first form required Ms. Leonard to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she did so, Ms. Leonard had to click the "Submit and Continue" button on the form to continue with the enrollment process. A true and correct representation of the first webform as it would have appeared when Ms. Leonard enrolled in CreditWorks℠ is attached as **Exhibit 7** to this Declaration. Ms. Leonard clicked the "Submit and Continue" button, and was presented with a second form to complete. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button.

10. The second webform required Ms. Leonard to enter her social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure:

Password | Confirm Password

By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy.

I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to:

- Provide my credit report (and/or credit score) to me for review while I have an account with ECS.
- Notify me of other products and services that may be available to me through ECS or through unaffiliated third parties.
- Notify me of credit opportunities and advertised credit offers.

I understand that I may withdraw this authorization at any time by contacting ECS.

Submit Secure Order

A true and correct representation of the second webform as it would have appeared when Ms. Leonard enrolled in CreditWorks℠ is attached as **Exhibit 8** to this Declaration. The phrase

"**Terms of Use Agreement**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "**Terms of Use Agreement**." When a consumer clicked on the "**Terms of Use Agreement**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure containing the full-text hyperlink to the Terms of Use Agreement was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage. After entering her information, Ms. Leonard clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Ms. Leonard enrolled in CreditWorks℠ is attached as **Exhibit 9** to this Declaration.

11. The Terms of Use Agreement that was in effect when Ms. Leonard enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a section entitled, "Amendments," which advised Ms. Leonard that she would be bound by the then-current Terms of Use Agreement each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement. Since enrolling in CreditWorks℠, Ms. Leonard has continuously used her subscription service, including after the current version of the Terms of Use came into effect.

12. The Terms of Use Agreement that was in effect when Ms. Leonard enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a provision that allowed her to opt-out of changes to the contract's arbitration clause. Based upon Experian's business records, Experian has no record of Ms. Leonard ever rejecting any amendment to the arbitration clause in the Terms of Use Agreement.

13. Before filing this lawsuit on May 4, 2021, Ms. Leonard continuously used her CreditWorks℠ subscription including, among other things, to obtain reports that would have shown how the loans at issue in this case were reporting in her Experian credit file.

## III. FACTS PERTAINING TO STEPHANIE LAGUNA

14. On May 2, 2019, Ms. Laguna enrolled in CreditWorks℠. In order to successfully enroll, Ms. Laguna had to complete two webforms. The first form required Ms. Laguna to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she did so, Ms. Laguna had to click the "Submit and Continue" button on the form to continue with the enrollment process. A true and correct representation of the first webform as it would have appeared when Ms. Laguna enrolled in CreditWorks℠ is attached as **Exhibit 7** to this Declaration. Ms. Laguna clicked the "Submit and Continue" button, and was presented with a second form to complete. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button.

15. The second webform required Ms. Laguna to enter her social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure:



Password

Confirm Password

By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy.

I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to:

- Provide my credit report (and/or credit score) to me for review while I have an account with ECS.
- Notify me of other products and services that may be available to me through ECS or through unaffiliated third parties.
- Notify me of credit opportunities and advertised credit offers.

I understand that I may withdraw this authorization at any time by contacting ECS.

Submit Secure Order

A true and correct representation of the second webform as it would have appeared when Ms. Laguna enrolled in CreditWorks℠ is attached as **Exhibit 8** to this Declaration. The phrase "**Terms of Use Agreement**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "**Terms of Use Agreement**." When a consumer clicked on the "**Terms of Use Agreement**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure containing the full-text hyperlink to the Terms of Use Agreement was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage. After entering her information, Ms. Laguna clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Ms. Laguna enrolled in CreditWorks℠ is attached as **Exhibit 9** to this Declaration.

16. The Terms of Use Agreement that was in effect when Ms. Laguna enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a section entitled, "Amendments," which advised Ms. Laguna that she would be bound by the then-current Terms of Use Agreement each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement. Since enrolling in CreditWorks℠, Ms. Laguna has continuously used her subscription service, including after the current version of the Terms of Use came into effect.

17. The Terms of Use Agreement that was in effect when Ms. Laguna enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a provision that allowed her to opt-out of changes to the contract's arbitration clause. Based

upon Experian's business records, Experian has no record of Ms. Laguna ever rejecting any amendment to the arbitration clause in the Terms of Use Agreement.

18. Before filing this lawsuit on May 4, 2021, Ms. Laguna continuously used her CreditWorks℠ subscription including, among other things, to obtain reports that would have shown how the loans at issue in this case were reporting in her Experian credit file.

## IV. FACTS PERTAINING TO BECKY WITT

19. On October 23, 2016, Ms. Witt enrolled in CreditWorks℠. In order to successfully enroll, Ms. Witt had to complete two webforms. The first form required Ms. Laguna to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she did so, Ms. Laguna had to click the "Submit and Continue" button on the form to continue with the enrollment process. A true and correct representation of the first webform as it would have appeared when Ms. Witt enrolled in CreditWorks℠ is attached as **Exhibit 10** to this Declaration. Ms. Witt clicked the "Submit and Continue" button, and was presented with a second form to complete. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button.

20. The second webform required Ms. Witt to enter her social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure:



Account Information

Username

Password

Confirm Password

By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy. I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to provide them to me for review while I have an account with ECS. I also authorize ECS to obtain and use the information I provide, and my credit report and/or credit score(s), on a recurring basis to notify me of credit opportunities and other products and services that may be available to me through ECS or through unaffiliated third parties. I understand that I may withdraw this authorization at any time by contacting ECS.

Submit Secure Order

A true and correct representation of the second webform as it would have appeared when Ms. Witt enrolled in CreditWorks℠ is attached as **Exhibit 11** to this Declaration. The phrase "**Terms of Use Agreement**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "**Terms of Use Agreement**." When a consumer clicked on the "**Terms of Use Agreement**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure containing the full-text hyperlink to the Terms of Use Agreement was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage. After entering her information, Ms. Witt clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Ms. Witt enrolled in CreditWorks℠ is attached as **Exhibit 12** to this Declaration.

21. On March 3, 2019, Ms. Witt activated the "Boost" feature on her account. In order to do so, Ms. Witt was required re-affirm her consent to the Terms of Use by clicking the "Let's Go" button on the website:




A true and correct representation of the webform that would have been presented to Ms. Witt to add the "Boost" feature to her CreditWorks℠ subscription is attached as **Exhibit 4** to this Declaration. The phrase "**Experian Terms of Use**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Experian Terms of Use" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Let's Go" button, the consumer could view the entire text of the Terms of Use by clicking on the blue-highlighted hyperlink "**Experian Terms of Use**." When a consumer clicked on the "**Experian Terms of Use**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Ms. Witt clicked on the "Let's Go" button, thereby accepting and re-agreeing to the Terms of Use. I know this to be the case because she would not have been able to successfully add the "Boost" feature to her CreditWorks℠ subscription unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Ms. Meeks added the "Boost" feature to her CreditWorks℠ subscription is attached as **Exhibit 13** to this Declaration.

22. The Terms of Use Agreement that was in effect when Ms. Witt enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a section entitled, "Amendments," which advised Ms. Witt that she would be bound by the

then-current Terms of Use Agreement each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement. Since enrolling in CreditWorks℠, Ms. Witt has continuously used her subscription service, including after the current version of the Terms of Use came into effect.

23. The Terms of Use Agreement that was in effect when Ms. Witt enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a provision that allowed her to opt-out of changes to the contract's arbitration clause. Based upon Experian's business records, Experian has no record of Ms. Laguna ever rejecting any amendment to the arbitration clause in the Terms of Use Agreement.

24. Before filing this lawsuit on May 4, 2021, Ms. Witt continuously used her CreditWorks℠ subscription including, among other things, to obtain reports that would have shown how the loans at issue in this case were reporting in her Experian credit file.

## V. FACTS PERTAINING TO JOSEPH DE LA CRUZ

25. On August 28, 2020, Mr. De La Cruz enrolled in CreditWorks℠. In order to successfully enroll, Mr. De La Cruz had to complete a single webform. A true and correct representation of the webform as it would have appeared when Mr. De La Cruz enrolled in CreditWorks℠ is attached as **Exhibit 14** to this Declaration. The form required Mr. De La Cruz to enter his personal information—*i.e.*, his name, address, phone number, and e-mail address. After he entered his personal information, Mr. De La Cruz had to click the "Create Your Account" button on the webform in order to enroll. Immediately below the boxes to enter his e-mail address and password, was the following disclosure: "By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." The phrase "Terms of Use Agreement" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms

of Use Agreement." When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure was a large purple button that reads: "Create Your Account."




The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage. After entering his information, Mr. De La Cruz clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless he clicked that button. A true and correct copy of the Terms of Use that was in effect when Mr. De La Cruz enrolled in CreditWorks℠ is attached as **Exhibit 15** to this Declaration.

26. The Terms of Use Agreement that was in effect when Mr. De La Cruz enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a section entitled, "Amendments," which advised Mr. De La Cruz that he would be bound by the then-current Terms of Use Agreement each time he "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement. Since enrolling in CreditWorks℠, Mr. De La Cruz has continuously used his subscription service, including after the current version of the Terms of Use came into effect.

27. The Terms of Use Agreement that was in effect when Mr. De La Cruz enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to his account, had a provision that allowed him to opt-out of changes to the contract's arbitration clause. Based upon Experian's business records, Experian has no record of Mr. De La Cruz ever rejecting any amendment to the arbitration clause in the Terms of Use Agreement.

28. Before filing this lawsuit on May 4, 2021, Mr. De La Cruz continuously used his CreditWorks℠ subscription including, among other things, to obtain reports that would have shown how the loans at issue in this case were reporting in his Experian credit file.

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 25th day of June, 2021, in Costa Mesa, California.

David Williams