John A. Vogt (State Bar No. 198677)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
(T) 949-851-3939
(F) 949-553-7539
javogt@jonesday.com

Attorneys for Defendant
Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELETTRA MEEKS, JOSEPH DELACRUZ, STEPHANIE LAGUNA, AMBER LEONARD, and BECKY WITT, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.: MIDWEST RECOVERY SYSTEMS, LLC; and CONSUMER ADJUSTMENT COMPANY, INC.,<br><br>Defendants. | Case No. 3:21-cv-03266-VC<br><br>Assigned to: Judge Vince Chhabria<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.'S  CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:     December 16, 2021<br>Time:     10:00 a.m.<br>Place:    Zoom Webinar |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

LEGAL ARGUMENT .................................................................................................... 3

    I.      THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION ......... 3

          A.   Plaintiffs' Claims Are Subject To Binding Arbitration ............................. 3

          B.   A Valid Agreement to Arbitrate Exists ........................................................ 4

          C.   EIS Is A Third Party Beneficiary Under The Agreement ........................... 5

          D.   Plaintiffs' Claims Fall Within The Scope Of The Arbitration
              Agreement ........................................................................................................ 9

    II.     THERE IS NO PROCEDURAL IMPEDIMENT TO THIS MOTION ............... 12

    III.    THE ACTION MUST BE STAYED PENDING ARBITRATION ..................... 15

CONCLUSION ................................................................................................................ 15

1
2
**<u>TABLE OF AUTHORITIES</u>**
3
4
**Page**
5
C<small>ASES</small>

6
*Armstrong v. Michaels Stores, Inc.*,
7
    No. 17-CV-06540-LHK, 2018 WL 6505997 (N.D. Cal. Dec. 11, 2018) ..............................1, 2

8
*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...................................................................................................................3
9

10
*AT&T Tech, Inc. v. Communications Workers of America*,
    475 U.S. 643 (1986) ...............................................................................................................4, 10
11

12
*Banh v. Am. Honda Motor Co.*,
    Case No. 2:19-CV-05984-RGK-AS, 2020 WL 5035095 (C.D. Cal. July 28,
13
    2020) .........................................................................................................................................8

14
*Bernal v. Southwestern & Pacific Specialty Finance, Inc.*,
    No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 6, 2014)........................................14
15

16
*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020).....................................................................................................5
17

18
*Chartwell Staffing Servs. Inc. v. Atl. Solutions Grp. Inc.*,
    Case No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ....................12
19

20
*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
    207 F.3d 1126 (9th Cir. 2000)........................................................................................3, 9, 11
21
*Cione v. Foresters Equity Services, Inc.*,
22
    58 Cal. App. 4th 625 (Cal. Ct. App. 1997) ......................................................................7, 8, 9

23
*Collins & Aikman Products Co. v. Building Systems, Inc.*,
    58 F.3d 16 (2nd Cir. 1995)......................................................................................................11
24

25
*Crawford v. Beachbody, LLC*,
    No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .................................4
26

27
*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
    756 F.3d 1098 (8th Cir. 2014)...................................................................................................5
28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

*Fikham v. BMW of North America LLC*,
   No. 19-03963 VAP, 2019 WL 6721626 (C.D. Cal. Oct. 15, 2019)...........................................8

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y.2012) ......................................................................................5

*Graf v. Match.com, LLC*,
   No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015) .......................................4

*Greater N.Y. Mut. Ins. Co. v. Rankin*,
   298 A.D.2d 263 (N.Y. App. Div. 2002)...................................................................................8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ...................................................................................................................4

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   ---U.S.---, 139 S.Ct. 524 (2019) .......................................................................................9, 10

*Herrera v. Verra Mobility Corp.*,
   No. CV-20-00515-PHX-DWL, 2020 WL 6781269 (D. Az. Nov. 18, 2020) ...........................8

*In re Remicade (Direct Purchaser) Antitrust Litigation*,
   938 F.3d 515 (3rd Cir. 2019) .................................................................................................11

*Kaffaga v. Estate of Steinbeck*,
   938 F.3d 1006 (9th Cir. 2019)..................................................................................................5

*Kaselitz v. hiSoft Technology Int'l, Ltd.*,
   2013 WL 622382 (N.D. Cal. 2013).........................................................................................15

*Lacayo v. BMW of N. Am. LLC*,
   2020 WL 3971307 (N.D. Cal. July 13, 2020)...........................................................................8

*Lee v. Ticketmaster, LLC*,
   2019 WL 9096442 (N.D. Cal. April 1, 2019) ..........................................................................4

*Lucas v. Hertz Corp.*,
   875 F. Supp. 2d 991 (N.D. Cal. 2012) ...................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Maxit Designs, Inc. v. Coville, Inc.*,
No. CIV. S-05-1040 WBS DAD, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006)..............14, 15

*McCarthy v. Toyota Motor Corp.*,
2020 WL 6156583 (C.D. Cal. Oct. 20, 2020) .........................................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)...............................................................................................................10

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013)..........................................................................................6, 8, 15

*Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co.*,
862 F.3d 981 (9th Cir. 2017)....................................................................................................5

*Rent-A-Center W., Inc. v. Jackson*,
130 S. Ct. 2772 (2010) .............................................................................................................9

*Rizvi v. BMW of North America LLC*,
Case No. 5:20-cv-00229-EJD, 2020 WL 2992859 (N.D. Cal. June 4, 2020)...........................8

*Ronay Family Limited Partnership v. Tweed*,
216 Cal. App. 4th 830 (Cal. Ct. App. 2013) .......................................................................7, 8

*Shearson/Am. Express v. McMahon*,
482 U.S. 220 (1987)..................................................................................................................4

*Smith v. Rent-A-Center, Inc.*,
2019 WL 3004160 (E.D. Cal. July 10, 2019) ...................................................................13, 14

*Soto v. O.C. Communications, Inc.*,
Case No. 17-cv-00251-VC, 2018 WL 10534324 (N.D. Cal. Nov. 21, 2018)..........................14

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .....................................................................................5

*Willey v. J.P. Morgan Chase, N.A.*,
No. 09 Civ. 1397(CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009).....................................12

*Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.*,
CV 19-10337-DSF (JPRx), 2020 WL 2730926 (C.D. Cal. Mar. 13, 2020) .............................5

**INTRODUCTION**

Experian Information Solutions, Inc. ("EIS") moves to compel arbitration as a third-party beneficiary of the agreement between Plaintiffs and ConsumerInfo.com, Inc. d/b/a Experian Consumer Services ("ECS").  The Arbitration Agreement in the contract identifies "affiliates" as one of the kinds of entities with whom Plaintiffs have agreed to arbitrate; EIS is an affiliate of ECS; thus, ECS and Plaintiffs intended to allow EIS to invoke the arbitration provisions.

This Court's denial of EIS's prior motion provides no reason to deny this one.  Nothing in the FAA prohibits a successive motion to compel arbitration, and courts have regularly allowed parties to file a second motion to respond to changed circumstances, to cure technical defects, or to raise legal arguments that were not previously considered. Nor has EIS waived its right to seek arbitration as a third-party beneficiary.  In the Ninth Circuit, a finding of "waiver of the right to arbitration is disfavored," and "'any party arguing waiver of arbitration bears a heavy burden of proof.'"  *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *9 (N.D. Cal. Dec. 11, 2018) (citations omitted).  EIS has been clear since this case was filed that it intended to enforce its arbitration rights.  EIS has not propounded or responded to any discovery. Instead, EIS participated in one case management conference where it expressed to the Court and Plaintiffs that it intended to move to compel arbitration.  EIS has not engaged in any other litigation activity that was non-arbitration related.  And, while EIS's first motion did not raise third-party beneficiary as a grounds to compel arbitration, EIS reasonably relied on considerable case law that expressly allowed parties in EIS's shoes to enforce the Arbitration Agreement directly.  Given the Court's ruling on EIS's first motion, EIS has proceeded promptly to now raise the third-party beneficiary argument.  Given that this case is in its infancy, Plaintiffs could not possibly have suffered any prejudice.  Thus, EIS's motion should be granted.

**STATEMENT OF FACTS**

Over various points in time, each of the Plaintiffs enrolled in CreditWorks℠.  *See* Declaration of David Williams (Williams Decl.), ¶¶ 3-28 and Exs. 1-15.  At the time of enrollment, each Plaintiff was specifically advised of, and agreed to bound by, the Terms of Use governing their subscription by completing one or two webforms and clicking a button agreeing to

be bound by the subscription's Terms of Use Agreement. *Id.*, ¶¶ 3-4, 9-10, 14-15, 19-20, and 25. The webforms, disclosure, and submission button appeared on a single webpage. *Id.* Every version of the Terms of Use that was in effect when each Plaintiff enrolled had an Arbitration Agreement, which required Plaintiffs to litigate, among other things, all claims against "ECS" that "relate to" or "arise out of" their membership in non-class arbitration. *Id.*, Exs. 3, 5, 6, 9, 12, 13 and 15. The Arbitration Agreement in every version of the Terms of Use defines "ECS" to includes its affiliates. *Id.* At all times relevant to this action, EIS was an affiliate of ECS. *Id.*, ¶¶ 2 & 29.

At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information. *Id.*, Ex. 6. Further, CreditWorks subscribers, like Plaintiffs here, are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks. *Id.* The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), the receipt of any alerts notifying you of changes to the information contained in your credit report(s)." *Id.* The parties intended for EIS to benefit under the contract, and specifically included EIS within the scope of the Arbitration Agreement. *Id.*, ¶ 29.

Every version of the Terms of Use that was in effect when each Plaintiff enrolled has an amendment clause, which provides that Plaintiffs agreed to be bound by the then-current version of the Terms of Use every time they used their membership. *Id.*, Exs. 3, 5, 6, 9, 12, 13 and 15. After enrolling, every Plaintiffs continuously used their membership, including after the current version of the Terms of Use came into effect, thereby binding them to that agreement. *Id.*, ¶¶ 6, 11, 16, 22 and 26. Like all prior versions of the Terms of Use, the current version delegates "all issues" to an arbitrator to decide, "including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions[.]" *Id.*, Ex. 6. It also expressly incorporates the AAA rules. *Id.*

1

**LEGAL ARGUMENT**

2

**I.    THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION**

3

**A.    Plaintiffs' Claims Are Subject To Binding Arbitration**

4

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing

5

a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such

6

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This provision

7

"reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that

8

arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal

9

footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v.*

10

*Concepcion*, 563 U.S. 333, 339 (2011).

11

Pursuant to the FAA, arbitration must be compelled where, as here: (1) a valid agreement

12

to arbitrate exists; and (2) the arbitration agreement encompasses the claims at issue.  *See Chiron*

13

*Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).   An arbitration

14

agreement governed by the FAA, like the arbitration agreement here, is presumed to be valid and

15

enforceable.  *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987).  Indeed, there is

16

a presumption in favor of arbitrability.  *AT&T Tech,, Inc. v. Communications Workers of America*,

17

475 U.S. 643, 650 (1986).  The party seeking to evade arbitration bears the burden of showing that

18

the arbitration provision is invalid or does not encompass the claims at issue.  *See Green Tree Fin.*

19

*Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

20

**B.    A Valid Agreement to Arbitrate Exists**

21

Courts within this Circuit routinely enforce internet agreements where the user is required

22

to affirmatively acknowledge the agreement before proceeding with use of the website.  *See, e.g.*,

23

*Lee v. Ticketmaster, LLC*, 2019 WL 9096442, at *1 (N.D. Cal. April 1, 2019) (Chhabria, J.), aff'd

24

817 Fed. Appx. 393 (9th Cir. 2020) ("Ticketmaster provided notice of the terms of use adjacent to

25

the 'Place Order' button, included a hyperlink to the terms in a contrasting color, and informed the

26

user that "continuing past this page" (*i.e.*, placing an order) would indicate assent to the terms.").

27

As a matter of law, Plaintiffs agreed to the Terms of Use Agreement because:  (1) they had

28

clear notice of the Terms of Use, (2) they were admonished immediately above the "Submit Secure

MEMO. OF P'S & A'S I/S/O MTN. TO COMPEL
ARBITRATION; Case No. 4:21-cv-0326-VC

Order" button that, "By clicking "Submit Secure Order": I accept and agree to your **Terms of Use Agreement**, as well as acknowledge receipt of your **Privacy Policy** and **Ad Targeting Policy**," and (3) they clicked the "Submit Secure Order" button, thereby manifesting their assent to the Terms of Use.[1]   Numerous courts, under indistinguishable facts, have found that website users were bound by the Terms of Use.  *See Coulter*, 2021 WL 735726; *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWx), 2015 WL 4263957 (C.D. Cal. July 10, 2015); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y.2012); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011).

### C.   EIS Is A Third Party Beneficiary Under The Agreement

EIS—an affiliate of ECS—originally moved to compel arbitration of Plaintiffs' claims on the ground that EIS is a party to the Arbitration Agreement, and therefore is authorized to directly enforce that agreement.  *See* ECF Nos. 20 & 50.  This Court initially denied EIS's motion, ECF No. 53, and then reiterated that decision upon reconsideration, ECF No. 58.  In its reconsideration order, the Court acknowledged that "courts have not always been careful" in determining "whether the movant is a party to the contract or merely a third-party beneficiary of the arbitration clause." *Id*. at 3; *see also id*. (identifying at least three cases allowing direct enforcement under analogous contracts.)  Nonetheless, the Court found "[m]ore persuasive" the decisions "that explicitly run through this two-step analysis before permitting a non-signatory to enforce an arbitration clause." *Id*.  Under that analysis, the Court held that EIS is not listed among the entities identified in the Overview and Acceptance of Terms, and so cannot enforce arbitration directly as a party.  *Id*. at 4. While "[i]t may well be the case that all corporate affiliates of ConsumerInfo.com, Inc. can enforce

---

[1] With regard to Mr. De La Cruz, the website similarly admonished him:  "By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy."  Williams Decl., ¶ 25 and Ex. 14.

1   the arbitration as third-party beneficiaries," the Court held that EIS had "expressly declined" to

2   make that argument in its "reply brief."  *Id*.[2]  The Court therefore denied EIS's motion.  *Id*.

3        Regardless of whether EIS may directly enforce the Arbitration Agreement (as other courts

4   have held on similar facts), EIS may compel arbitration as a third-party beneficiary of the contract.

5   As a threshold matter, however, the question of whether EIS may invoke the Arbitration Agreement

6   as a third-party beneficiary has been delegated to an arbitrator to decide, as the delegation clause

7   contained in the Arbitration Agreement expressly provides that an "arbitrator shall have exclusive

8   authority to resolve any such dispute relating to the scope and enforceability of this arbitration

9   provision[.]"  Williams Decl., Ex. 6.  The Arbitration Agreement also expressly incorporates the

10  AAA rules.  *Id*. ("[T]he AAA Rules shall govern the parties' dispute[.]").  Because the definition

11  of "ECS" in the Arbitration Agreement sweeps in EIS, the delegation clause within the Arbitration

12  Agreement applies to Plaintiffs' claims against EIS.  *See, e.g.*, *Portland Gen. Elec. Co. v. Liberty*

13  *Mutual Ins. Co.*, 862 F.3d 981, 986 (9th Cir. 2017) (incorporated delegation clause required

14  arbitrator, not court, to decide if claims against non-signatories were arbitrable); *Worldwide Film*

15  *Productions, LLC v. JPMorgan Chase Bank, N.A.*, CV 19-10337-DSF (JPRx), 2020 WL 2730926,

16  at *2-3 (C.D. Cal. Mar. 13, 2020) (whether claims against non-signatory are subject to arbitration

17  is for an arbitrator to decide where, as here, arbitrability has been delegated to an arbitrator, and

18  there is no language in the arbitration agreement expressly limiting its scope to only certain parties);

19  *see also Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th

20  Cir. 2014) ("Whether a particular arbitration provision may be used to compel arbitration between

21  a signatory and a non-signatory is a threshold question of arbitrability," and incorporation of the

22  AAA Rules is "a clear and unmistakable indication the parties intended for the arbitrator to decide

23  threshold questions of arbitrability."); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842

24  (6th Cir. 2020) (same).  Accordingly, the question of whether EIS may enforce the Arbitration

25  Agreement is for an arbitrator to decide.

26

27        [2] Under the law of this Circuit, EIS could not have raised the third-party beneficiary
    argument for the first time in its reply brief.  *See, e.g.*, *Kaffaga v. Estate of Steinbeck*, 938 F.3d
28  1006, n.8 (9th Cir. 2019).

MEMO. OF P'S & A'S I/S/O MTN. TO COMPEL
ARBITRATION; Case No. 4:21-cv-0326-VC

1    But even if the Court were to decide the question, it is clear that EIS is a third-party

2    beneficiary under the agreement.  Under California law, a third party may assert rights under a

3    contract "if the parties to the agreement intended the contract to benefit the third party." *Murphy*

4    *v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).[3]  Applying this and equivalent standards,

5    courts have held that a party named in the arbitration agreement, either directly or as a member of

6    a class, as one against whom claims must be arbitrated can enforce as a third-party beneficiary.

7    *Ronay Family Limited Partnership v. Tweed*, 216 Cal. App. 4th 830, 835 (Cal. Ct. App.

8    2013), is instructive.  There, the plaintiff (Ronay) signed a contract with CapWest "agree[ing]

9    that … any controversy arising out of or related to [its] accounts, the transactions with [CapWest],

10   its officers, directors, agents, registered representatives and/or employees … shall be settled by

11   arbitration." *Id*. at 835.  Ronay sued Tweed for opening an account on Ronay's behalf with the

12   now-defunct CapWest.  *Id*. at 834–35.  The court held that Tweed could compel arbitration.

13   "To invoke the third party beneficiary exception," it is "not necessary that the beneficiary be named

14   and identified as an individual" in the contract; rather, the third party need only "show[] that he is

15   a member of a class of persons for whose benefit it was made." *Id*. at 838, 839 (internal quotation

16   marks and citation omitted).  Tweed met that test:  the arbitration agreement covered claims against

17   CapWest's "agents" and "registered representatives," precisely the roles that Tweed played in

18   Ronay's transactions. Id. at 839.  "By expressly requiring arbitration of claims against CapWest's

19   agents and registered representatives, the arbitration clause was intended to benefit nonparties such

20   as Tweed," "allow[ing] them to enforce the arbitration clause as third party beneficiaries." *Id*.

21   *Cione v. Foresters Equity Services, Inc.*, 58 Cal. App. 4th 625 (Cal. Ct. App. 1997), also is

22   instructive.  There, Cione agreed with the National Association of Securities Dealers that he would

23   "arbitrate any dispute … that may arise between [him] and [his] firm." *Id*. at 636.  Cione then sued

24   his firm (FESCO), which sought to compel arbitration.  Because the parties' "intent to benefit"

---

[3] While Plaintiffs reside in different states and have contracts governed by different states' laws, Plaintiffs relied solely upon California law in their discussion of third-party beneficiary status. *See* ECF No. 39, 5–8.  Regardless, EIS is aware of no material difference with respect to the law governing third-party beneficiaries in the various jurisdictions at issue.

- 6 -

1    FESCO "appear[ed] from the terms of" the contract itself, the California Court of Appeals held that

2    FESCO properly invoked as a third-party beneficiary. *Id.*

3         *Ronay* and *Cione* are not outliers.  Courts routinely allow third parties to compel arbitration

4    in such circumstances.  *See*, *e.g.*, *Lacayo v. BMW of N. Am. LLC*, 2020 WL 3971307, at *1 (N.D.

5    Cal. July 13, 2020) (Chhabria, J.) (compelling Lacayo to arbitrate his claims against BMW of North

6    America because the arbitration clause in his agreement with BMW Financial Services "explicitly

7    applie[d] to affiliates" like BMW of North America); *Herrera v. Verra Mobility Corp.*, No. CV-

8    20-00515-PHX-DWL, 2020 WL 6781269, at *6 (D. Az. Nov. 18, 2020) (allowing ATS Processing

9    and ATS Consolidated to enforce an arbitration agreement because the contract "defined 'us' as

10   encompassing vendors and third-party service providers" like them); *Banh v. Am. Honda Motor

11   Co.*, Case No. 2:19-CV-05984-RGK-AS, 2020 WL 5035095, at *5 (C.D. Cal. July 28, 2020)

12   (allowing Honda to "invoke the right to the benefits of the arbitration agreements" in question

13   because one of the parties (Acura) was "defined to include Honda"); *Greater N.Y. Mut. Ins. Co. v.

14   Rankin*, 298 A.D.2d 263, 263 (N.Y. App. Div. 2002) (third parties may enforce arbitration

15   agreements where "the right of the nonsignatory is expressly provided for in the agreement");

16   *Fikham v. BMW of North America LLC*, No. 19-03963 VAP, 2019 WL 6721626, at *2 (C.D. Cal.

17   Oct. 15, 2019) (same); *Rizvi v. BMW of North America LLC*, Case No. 5:20-cv-00229-EJD, 2020

18   WL 2992859, at *2-3 (N.D. Cal. June 4, 2020) (same).

19        Under this authority, EIS qualifies as a third-party beneficiary entitled to enforce the

20   Arbitration Agreement.  That Agreement expressly includes "affiliates" like EIS within the

21   definition of "ECS," and it makes clear that consumers and ECS (so defined) "agree[d] to arbitrate

22   all disputes" within its scope.  Williams Decl., Ex. 6.  Moreover, as reflected in the Terms of Use,

23   EIS contributes to the services that CreditWorks subscribers receive, as it provides, among other

24   things, regular access to how information appears in subscribers' EIS credit files, including changes

25   to their credit file information.  Williams Decl., Ex. 6 at 1–3.  Thus, the parties "intended the

26   contract to benefit" EIS, *Murphy*, 724 F.3d at 1234; that intent "appear[s] from the terms of" the

27   agreement itself, *Cione*, 58 Cal. App. 4th at 636, as well as from the contract as a whole.

28        **D.    Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreement**

If there is any question as to whether Plaintiffs' claims fall within the scope of the arbitration clause contained in the Terms of Use Agreement, that issue is to be decided by an arbitrator: "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]" Williams Decl., Exs. 3, 5, 6, 9, 12, 13 and 15.  Where, as here, the parties have clearly and unmistakably agreed that the arbitrator should decide the validity and applicability of an arbitration provision, the FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *Rent-A-Center W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) (same); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, ---U.S.---, 139 S.Ct. 524, 527-530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

In *Coulter*, the court explained that "the Arbitration Provision's Delegation Clause provides that '[a]ll issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision' and grants the arbitrator 'exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.'"  2021 WL 735726 at *4.  The court found that "[t]his provision constitutes a 'clear and unmistakable' delegation clause under *Henry Shein* and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision."  *Id*.  In short, because the Terms of Use Agreement makes an unambiguous expression of intent to arbitrate arbitrability, any question over whether Plaintiffs' claims fall within the arbitration clause are for an arbitrator to decide.  *Id*.

But even if there had not been such delegation, where, as here, the parties have entered into a valid arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

1   interpretation that covers the asserted dispute." *AT&T Tech.*, 475 U.S. at 650.  That is, "[a]ny

2   doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

3   *Mitsubishi Motors*, 473 U.S. at 626.  Where an arbitration clause is broadly worded, there is a

4   heightened presumption of arbitrability, such that "'[in] the absence of any express provision

5   excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose

6   to exclude the claim from arbitration can prevail.'" *AT&T Tech.*, 475 U.S. at 650 (quoting *United*

7   *Steelworkers*, 363 U.S. at 582-83).

8          Here, at the outset, the Terms of Use Agreement admonishes:  "For the avoidance of doubt,

9   this Agreement expressly applies to . . . any and all transactions between you and ECS through the

10  Websites, including for the provision of any Services or of any credit, personal, financial or other

11  information delivered as part of or in conjunction with free Services or paid Services . . . ."

12  Williams Decl., Ex. 6.  The arbitration clause provides that "all disputes and claims between us

13  arising out of this Agreement directly related to the Services or Websites to the maximum extent

14  permitted by law" are "subject to arbitration."  *Id*.  It further provides that "[t]his agreement to

15  arbitrate is intended to be broadly interpreted and to make all disputes and claims between us

16  directly relating to the provision of any Service and/or your use of any Website subject to arbitration

17  to the fullest extent permitted by law."  *Id*.  It then provides that "[t]he agreement to arbitrate

18  includes, but is not limited to: claims arising out of or relating to any aspect of the relationship

19  between us arising out of any Service or Website, whether based in contract, tort, statute[.]"  *Id*.

20         Like all other jurisdictions, the Ninth Circuit treats the phase "arising out of" and "relating

21  to" in an arbitration clause as "broad and far reaching."  *Chiron*, 207 F.3d at 1131; *see also In re*

22  *Remicade (Direct Purchaser) Antitrust Litigation*, 938 F.3d 515, 525 (3rd Cir. 2019) ("Courts have

23  generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an 'extremely

24  broad' agreement to arbitrate any dispute relating in any way to the contract.  [Citation]  Such broad

25  clauses have been construed to require arbitration of any dispute between the contracting parties

26  that is connected in any way with their contract." [Citation]); *Collins & Aikman Products Co. v.*

27  *Building Systems, Inc.*, 58 F.3d 16, 20 (2nd Cir. 1995) ("'Any claim or controversy arising out of

28  or relating to th[e] agreement' is the paradigm of a broad clause." (citing *David L. Threlkeld & Co.*

- 9 -

MEMO. OF P'S & A'S I/S/O MTN. TO COMPEL
ARBITRATION; Case No. 4:21-cv-0326-VC

*v. Metallgesellschaft Ltd.*, 923 F.2d 245, 251 (2d Cir. 1991).) That being the case, if "the allegations underlying the claims 'touch matters' covered by the parties' ... agreement[], then those claims must be arbitrated[.]" *Id.* (citations omitted).

Here, Plaintiffs' claims against EIS plainly "touch matters" covered by the arbitration clause.    By virtue of their CreditWorks subscriptions, Plaintiffs learned how the loans at issue in this case were reporting on their EIS credit files.   Williams Decl., ¶¶ 8, 13, 18, 24 & 28. Furthermore, claims under the FCRA are governed by a two-year statute of limitations, which is triggered on the date of discovery of an alleged violation.   *See* 15 U.S.C. § 1681p; *Willey v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1397(CM), 2009 WL 1938987, at *4 5 (S.D.N.Y. July 7, 2009). Through their CreditWorks subscription, Plaintiffs discovered how EIS was reporting the loans, including how certain loans at issue were being reported and the alleged changes to the "date of first delinquency." Williams Decl., ¶¶ 8, 13, 18, 24 and 28.  Thus, Plaintiffs' claims relate to their subscriptions, and are subject to arbitration.

## II.    <u>THERE IS NO PROCEDURAL IMPEDIMENT TO THIS MOTION</u>

Because EIS is a third-party beneficiary, the only question is whether there is some reason that EIS cannot now enforce arbitration under that theory.  Nothing in the FAA, the case law, or this Court's prior decisions would support that unfair result.

Start first with the FAA.  It provides that "[a] party aggrieved by the alleged failure … of another to arbitrate … may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.   EIS's quickly filed second request to compel arbitration is clearly timely under this provision.  *See, e.g.*, *Chartwell Staffing Servs. Inc. v. Atl. Solutions Grp. Inc.*, Case No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020) (filing "within three months of the initiation of the action and within ten weeks of the first service" by the plaintiff of the relevant agreements defeated any claim of undue delay).  Moreover, nothing in this provision restricts a party from seeking to compel arbitration a second time after the denial of a first request on technical grounds.  In fact, the Supreme Court has explained that, in light of the FAA's "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of

MEMO. OF P'S & A'S I/S/O MTN. TO COMPEL
ARBITRATION; Case No. 4:21-cv-0326-VC

1    arbitration, whether the problem at hand is the construction of the contract language itself or an

2    allegation of *waiver, delay, or a like defense to arbitrability*." *Moses H. Cone Mem'l Hosp. v.*

3    *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)  (emphasis added).  Barring EIS from filing a

4    second, clearly meritorious motion to compel arbitration because of the unexpected failure of its

5    first would violate this strong federal policy.

6         The case law further supports EIS's ability to file a second motion to compel in these

7    circumstances.  *Smith v. Rent-A-Center, Inc.*, 2019 WL 3004160 (E.D. Cal. July 10, 2019) is

8    instructive.  In *Smith*, the district court denied the defendant's first motion to compel arbitration

9    because evidence authenticating an electronic signature in the previous motion was insufficient.

10   The defendant appealed that ruling to the Ninth Circuit.  While that appeal was pending, the

11   defendant filed a second motion to compel arbitration on a legal issue not reached by the court in

12   the previous motion.  In opposing the second motion, the plaintiff contended that the court "does

13   not have jurisdiction to review the instant motion because Defendant took an interlocutory appeal

14   from the Court's decision in the first motion, which Plaintiff purports divested this Court of

15   jurisdiction over Defendant's second motion."  *Id*. at *3.  The court rejected the argument, noting

16   that "[w]hen an interlocutory appeal is filed, trial courts are divested of jurisdiction only over 'the

17   precise issue appealed.'"  *Id*. (citations omitted).  Plaintiff also contended that the second motion

18   was nothing more than an improper motion for reconsideration.  The court rejected that argument,

19   too: "The motion before the Court is not correctly cast as a motion for reconsideration:  the Court

20   is not being asked to reconsider its previous ruling on the insufficiency of evidence authenticating

21   Plaintiff's signature. Further, neither Rule 59 nor Rule 60 of the Federal Rules of Civil Procedure,

22   each a vehicle for reconsideration requests, is appropriately applied in this case.  Instead, this is a

23   motion seeking to reach the ultimate question the Court did not reach in the last motion, as

24   explained above."  Finally, the court explained that the "Defendant is correct that the Court's ruling

25   on its previous motion did not preclude it from bringing the instant motion[,]" noting that this

26   conclusion "is supported by other district court cases."  *Id*. (citing *Maxit Designs, Inc. v. Coville,*

27   *Inc.*, No. CIV. S-05-1040 WBS DAD, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006); *Lucas v. Hertz*

28

1   *Corp.*, 875 F. Supp. 2d 991 (N.D. Cal. 2012); *Bernal v. Southwestern & Pacific Specialty Finance,*

2   *Inc.*, No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 6, 2014)).

3   Similarly, in *Soto v. O.C. Communications, Inc.*, Case No. 17-cv-00251-VC, 2018 WL

4   10534324, at *2 (N.D. Cal. Nov. 21, 2018) (Chhabria, J.), this Court granted a second motion to

5   compel arbitration fixing an evidentiary issue that plagued the earlier motion.  Likewise, in *Lucas*

6   *v. Hertz Corp.*, 875 F. Supp. 2d 991, 998 n.6 (N.D. Cal. 2012), the court granted a second motion

7   to compel arbitration after denying the first due to evidentiary gaps in the moving party's original

8   papers.  In *Bernal*, the court granted a renewed motion to compel arbitration after both sides had

9   failed to submit a copy of the relevant agreement in their initial briefing. 2014 WL 1868787, at *1

10   n.1.  And, in *Maxit*, the court explained that the court's previous order on defendant's motion to

11   compel arbitration did not bar the second motion where it was based upon different legal grounds

12   that were not considered in the court's previous ruling.  2006 WL 2734366, at *5 n.6.

13   EIS's motion falls comfortably within these cases.  EIS's original motion sought to compel

14   arbitration directly because, as this Court has acknowledged, numerous courts have allowed parties

15   in identical circumstances to do just that.  *See* ECF No. 58, at 3 (EIS "ha[d] a point" in its

16   reconsideration motion in light of at least three cases compelling arbitration directly).)  Shortly after

17   this Court held that EIS could not rely on what this Court found to be erroneous case law, EIS filed

18   the instant motion on a legal grounds not considered in the first motion—EIS's status as a third-

19   party beneficiary.  There is no meaningful difference between that course of conduct and the filing

20   a second motion to compel to cure "inadequate" briefing, *Soto*, 2018 WL 10534324, at *2, to fix

21   evidentiary gaps in the party's original motion, *see Lucas*, 875 F. Supp. 2d at 998 n.6; *Smith*, 2019

22   WL 3004160, at *3, or to raise legal grounds not previously briefed, *see Maxit*, 2006 WL 2734366,

23   at *5 n.4.[4]  In short, the instant motion is procedurally proper.

24   _____

[4] Moreover, as noted, EIS previously moved for direct enforcement because of significant
25   case law authorizing that approach.  Even the case law the Court found to be more persuasive did
not suggest that a party in EIS's shoes was required to proceed as a third-party beneficiary in order
26   to compel arbitration.  Unlike this case—where the Arbitration Agreement defines "us" to include
affiliates and, hence, one of the entities that "agree[d]" with Plaintiffs "to arbitrate all disputes"
27   (Williams Decl., Ex. 6)—the movants in the cases the Court relied upon in its earlier order either:
(1) did not (and could not) raise credible claims of party status, or (2) were found to be parties and
28   the court permitted direct enforcement.  *See Murphy*, 724 F.3d at 1229–34 (DirecTV was not an

1  **III.    THE ACTION MUST BE STAYED PENDING ARBITRATION**

2       Because Plaintiffs must be compelled to arbitrate their claims, the action should be stayed

3  pending completion of arbitration.  9 U.S.C. § 3.

4                                **CONCLUSION**

5       For the foregoing reasons, EIS respectfully requests that the Court grant this Motion, and

6  stay this action pending the completion of arbitration.

7  Dated:  November 17, 2021                    JONES DAY

8

9                                         By: */s/ John A. Vogt*
                                            John A. Vogt

10                                        Attorney for Defendant
11                                        Experian Information Solutions, Inc.

12

13

14

15

16

17

18

19

20

21  affiliate of AT&T at the time of the contract (and hence could not possibly have been a party to the
22  agreement); but even then, the court noted that had the agreement applied to "future" affiliates, it
    may have reached a different conclusion); *McCarthy v. Toyota Motor Corp.*, 2020 WL 6156583,
23  at *5 (C.D. Cal. Oct. 20, 2020) (unlike here, the definition of "us" did not include affiliates; instead,
    the arbitration agreement simply extended coverage to "claims" against "us" and various "Covered
24  Parties," which was defined to include affiliates; hence the defendants, who claimed that they were
    affiliates, were not parties to the agreement itself; nonetheless, the court held that the two
25  defendants did not qualify as "affiliates"); *Kaselitz v. hiSoft Technology Int'l, Ltd.*, 2013 WL
    622382 (N.D. Cal. 2013) (the court found that the defendant "is a party to the employment
26  agreements, and, consequently, can enforce the arbitration provisions therein"; it did not deal with
    the facts presented here—where an entity is a party to the arbitration agreement, but not the broader
27  contract; nor did the case even mention or address third-party beneficiary status).

28

MEMO. OF P'S & A'S I/S/O MTN. TO COMPEL
ARBITRATION; Case No. 4:21-cv-0326-VC