Craig C. Marchiando, Esq. (SBN 283829)
Leonard A. Bennett, Esq. (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (*pro hac vice*)
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELETTRA MEEKS, et al., | Case No.: 3:21-cv-03266-VC |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC.; et al., | |
| Defendants. | Date: June 1, 2023<br>Time: 1:00 p.m.<br>Judge: Vince Chabbria |
| | Date Filed: April 21, 2023<br>Trial Date: None set |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **June 1, 2023 at 1:00 p.m.,** or as soon thereafter as this matter may be heard, by videoconference before the Honorable Vince Chabbria, Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard respectfully move this court to preliminarily approve the

Settlement reached in this case, the terms of which are more specifically described in the accompanying Memorandum and Points of Authority filed in support of this Motion.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declarations of Leonard Bennett, Kristi Kelly, and Matthew Wessler and exhibits thereto, the pleadings and papers on file in this Action, and any other such evidence and argument as the Court may consider. Defendant Consumer Adjustment Company, Inc. ("CACi") does not oppose this Motion.

Dated: April 21, 2023                                         Respectfully submitted,

By:  ___/s/ *Craig C. Marchiando*___

Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Matthew Wessler (pro hac vice)
Gupta Wessler PLLC
2001 K Street, NW
Suite 850 North
Washington, DC 20006
Telephone: 202-888-1741
E-mail: matt@guptawessler.com

*Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.   INTRODUCTION…………………………………………………………………………1

II.  BACKGROUND………………………………..………………………………………2

III. SETTLEMENT AGREEMENT…………………………………………………………...5

    A.  The Rule 23(b)(2) Settlement Class…………………………………………..5

        1.  The Rule 23(b)(2) Settlement Class obtains significant injunctive relief in exchange for a narrow release……………………………………………………………5

        2.  Class Administration and Rule 23(b)(2) Notice Plan………………………………7

        3.  Class Counsel is Not Seeking Attorneys' Fees or a Service Award for Representation of the Rule 23(b)(2) Settlement Class …………………………………………...8

    B.  The Rule 23(b)(3) Settlement Class…………………………………………...8

        1.  The Rule 23(b)(3) Class Settlement provides a significant cash payment to Class Members………………………………………………..………………8

        2.  Rule 23(b)(3) Settlement Class Release……………………………………9

        3.  Rule 23(b)(3) Settlement Administration and Notice Plan………………………..10

        4.  Attorneys' fees and Service Awards for representation of the Rule 23(b)(3) Settlement Class……………………………………………………..……11

IV. LEGAL STANDARDS FOR PRELIMINARY APPROVAL…………………………………..13

V.  ARGUMENTS AND AUTHORITIES…………………………………………………13

    A.  The Proposed Settlement Warrants Preliminary Approval………………………13

        1.  The Settlement is the product of good-faith, informed, arms'-length negotiations………………………………………………………....14

        2.  The Settlement is fair, adequate, and reasonable…………………………..15

---

a.    The strengths and risks of Plaintiffs' case and likely duration of further litigation. ………………………………………………………...16

b.    The amount offered in settlement……………………………………..17

c.    The allocation of the Settlement………………………………………18

d.    The extent of discovery completed and stage of proceedings……………18

e.    The views of Class Counsel……………………………………………19

f.    Government participant and Class Member reaction……………………..19

3.    The Class Representatives and Class Counsel have adequately represented the proposed Classes………………………………………………………………19

4.    The proposed Fee and Expense Award is fair and reasonable……………………20

B.    Certification of the Settlement Classes is appropriate…………………………………21

1.    The Settlement Classes Meet the Requirements of Rule 23(a)……………………21

2.    The Rule 23(b)(2) Settlement Class satisfies the requirements of Rule 23(b)(2)…...23

3.    The Rule 23(b)(3) Settlement Class satisfies the requirements of Rule 23(b)(3) …...24

C.    The Court Should Approve The Proposed Notice Plan…………………………………25

1.    The proposed notice plan is adequate and warrants preliminary approval………...25

VI. CONCLUSION ……………………………………………………………………………28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
    No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ...................................... 14

*Anixter v. Home–Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ....................................................................................................... 16

*Avina v. Marriott Vacations Worldwide Corp.*,
    No. SACV18685JVSJPRX, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019) ........................... 13, 19

*Behfarin v. Pruco Life Ins. Co.*,
    No. CV 17-5290-MWF-FFMx, 2019 WL 7188575, at *5 (C.D. Cal. Nov. 26, 2019) ........................ 12

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir.1979) ........................................................................................................... 16

*Bias v. Wells Fargo & Co.*,
    312 F.R.D. 528, 537 (N.D. Cal. 2015) ........................................................................................... 22

*Bravo v. Gale Triangle, Inc.*,
    No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ...................... 21

*Brice v. Plain Green, LLC*,
    372 F. Supp. 3d 955 (N.D. Cal. 2019) ....................................................................................... 3, 24

*Briseno v. Henderson*,
    998 F.3d 1014, 1026-28 (9th Cir. 2021) ........................................................................................ 13

*Browning v. Yahoo! Inc.*,
    C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ...................................................... 27

*Bumgardner v. Lite Cellular, Inc.*,
    996 F. Supp. 525, 526 (E.D. Va. 1998) ........................................................................................... 8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-03266-VC

iii

*Celano v. Marriott Int'l Inc.*,

    242 F.R.D. 544, 548-49 (N.D. Cal. 2007)...................................................................................21

*Chalian v. CVS Pharmacy, Inc.*,

    No. CV 16-08979 AB (AGRx), 2020 WL 7414739, at *2 (C.D. Cal. Nov. 20, 2020) ..........................27

*Chester v. TJX Cos.*,

    No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017)......................17

*Churchill Vill., L.L.C. v. Gen. Elec.*,

    361 F.3d 566, 575 (9th Cir. 2004) .............................................................................................13

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1269, 1276 (9th Cir. 1992) .........................................................................................12

*Cohorst v. BRE Props.*,

    No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ......................14

*Commonwealth of Penn. v. Think Fin., Inc.*,

    2016 WL 183289, at *1 (E.D. Pa. Jan. 14, 2016) ..........................................................................2

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,

    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ..........................................................................17

*Custom LED, LLC v. eBay, Inc.*,

    No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ........................................18

*Dennis v. Kellogg Co.*,

    No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013) ...................17

*Dreher v. Experian Info. Sols., Inc.*,

    856 F.3d 337, 340 (4th Cir. 2017) .............................................................................................16

*Dukes v. Wal–Mart Stores, Inc.*,

    603 F.3d 571 (9th Cir.2010), *rev'd*, *Dukes,* 131 S.Ct. 2541 ....................................................25

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970, 985 (9th Cir. 2011) .............................................................................................22

*Garner v. State Farm. Mut. Auto. Ins. Co.*,

    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................................16

*Gibbs v. Haynes Invs., LLC*,

    368 F. Supp. 3d 901 (E.D. Va. 2019), *aff'd*, 967 F.3d 332 (4th Cir. 2020) .................................3

*Gibbs v. Plain Green, LLC*,

    331 F. Supp. 3d 518 (E.D. Va. 2018) ...........................................................................................3

*Gibbs v. Plain Green, LLC*,

    Case No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019) .........................................................................3

*Gingras v. Think Fin., Inc.*,

    922 F.3d 112 (2d Cir. 2019) ..........................................................................................................3

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011, 1026 (9th Cir. 1998) ............................................................................... 13, 15, 22

*Hanon v. Dataproducts Corp.*,

    976 F.2d 497, 508 (9th Cir. 1992) ...............................................................................................22

*Harris v. Vector Mktg. Corp.*,

    No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ....................................21

*Hickcox-Huffman v. U.S. Airways, Inc.*,

    No. 10-cv-05193, 2019 WL 1571877, at *2 (N.D. Cal. April 11, 2019) ......................................21

*Hillman v. Lexicon Consulting, Inc.*,

    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017)...........19

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935, 964 (9th Cir. 2011) ........................................................................................13, 15

*In re Heritage Bond Litig.*,

    No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) ..............................20

*In re Mego Fin. Corp.*,

    213 F.3d 454, 458 (9th Cir. 2000) ..............................12

*In re Online DVD-Rental Antitrust Litig.*,

    779 F.3d 934, 946 (9th Cir. 2015) ..............................27

*In re Syncor ERISA Litig.*,

    516 F.3d 1095, 1101 (9th Cir. 2008) ..............................12

*Johnson v. Triple Leaf Tea Inc.*,

    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ..............................17

*Lane v. Facebook, Inc.*,

    696 F. 3d 811, 826 (9th Cir. 2012) ..............................27, 28

*Lloyd v. Navy Federal Credit Union*,

    No. 17-cv-1280-BAS-RBB, 2018 WL 2269958, at *3 (S.D. Cal. May 28, 2019) ..............................18

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152, 1163 (9th Cir. 2001) ..............................25

*Longest v. Green Tree Servicing LLC*,

    308 F.R.D. 310, 325 (C.D. Cal. 2015) ..............................22

*Ma v. Covidien Holding, Inc.*,

    No. SACV 12-02161, 2014 WL 360196, at *10 (C.D. Cal. Jan. 31, 2014) ..............................12

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,

    No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013) ..............................14

*Molski v. Gleich*,

    318 F.3d 937, 947 (9th Cir.2003) ..............................25

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*

    221 F.R.D. 523, 528 (C.D. Cal. 2004) ................................................................................19

*Noroma v. Home Point Fin. Corp.,*

    No. 17-cv-07205, 2019 WL 1589980, at *4 (N.D. Cal. April 12, 2019) ..............................21

*Parsons v. Ryan,*

    754 F.3d 657, 688 (9th Cir. 2014) .......................................................................................23

*Paz v. AG Adriano Goldschmied, Inc.,*

    No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016) ...............17

*Perks v. Activehours, Inc.,*

    No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) ....................27

*Powers v. Eichen,*

    229 F.3d 1249, 1256-57 (9th Cir. 2000) ..............................................................................20

*Rannis v. Recchia,*

    380 Fed. App'x 646, 651 (9th Cir. 2010) .............................................................................21

*Rodriguez v. W. Publ'g Corp.,*

    563 F. 3d 948, 962 (9th Cir. 2009) ........................................................................... 14, 16, 27

*Russell v. Kohl's Dep't Stores, Inc.,*

    755 Fed. App'x 605, 608 (9th Cir. 2018) ............................................................................15

*Senne v. Kansas City Royals Baseball Corp.,*

    No. 14-cv-00608-JCS, 2021 WL 134889, at *1 (N.D. Cal. Jan. 14, 2021) ..........................27

*Spann v. J.C. Penney Corp.,*

    314 F.R.D. 312, 319 (C.D. Cal. 2016) .................................................................................12

*Trans World Airlines,*

    409 U.S. 363 (1973) .............................................................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,

    136 S. Ct. 1036, 1045 (2016)..................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338, 350 (2011)..............................................................................21, 22

*Walters v. Target Corp.*,

    No. 3:16-cv-1678-L-MDD, 2019 W 6696192, at * (S.D. Cal. Dec. 6, 2019).......................18

*Yahoo! Inc. Customer Data Sec. Breach Litig.*,

    No. 16-MD-02752, 2019 U.S. Dist. LEXIS 15034 (N.D. Cal. Jan. 30, 2019).......................12

**Statutes**

15 U.S.C. § 1681s-2(b), the Fair Credit Reporting Act..................................................10

15 U.S.C § 1692k, the Fair Debt Collection Practices Act ........................................5, 17

28 U.S.C. § 1715, Class Action Fairness Act of 2005..................................................7

**Other Authorities**

Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1793 (3d ed. 2006)...................25

*Newberg on Class Actions*, § 11.41 (4th ed. 2013) ..................................................14

Rule Advisory Committee Notes to FED. R. CIV. P. 23, 39 F.R.D. 69, 107.........................26

**Rules**

FED. R. CIV. P. 23(a)................................................................................... passim

FED. R. CIV. P. 23(e)................................................................................... passim

I.    **INTRODUCTION**

Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard, individually and on behalf of the proposed Settlement Classes,[1] seek preliminary approval of a proposed Settlement of claims against Defendant Consumer Adjustment Company, Inc. ("CACi"). The Settlement Agreement, if approved, will create a $436,041 Common Fund and will resolve the claims of Plaintiffs, the Rule 23(b)(2) Settlement Class Members, and the Rule 23(b)(3) Settlement Class Members deriving from CACi's alleged violations of state and federal law through its collection of certain defaulted debts stemming from defaulted Great Plains, Plain Green, and MobiLoan debts. The Common Fund will provide cash payments to Rule 23(b)(3) Settlement Class Members, as well as pay for notice and administration costs, and any award of attorneys' fees and costs and Service Awards that the Court may approve. Settlement Class Members do not need to submit a claim form or any other documentation to receive monetary compensation, which will be distributed *pro rata* according to the amount that they paid toward the defaulted debts. In addition to the Common Fund, the Settlement also includes important and valuable nonmonetary consideration to Rule 23(b)(2) Class Members in the form of cooperation by CACi in providing an authenticated class list that can be used against other parties involved in the collection of or credit reporting about these debts; an agreement to stop its collection efforts regarding the debts; and an agreement to screen any future loan portfolios it purchases so that it does not attempt to collect similar illegal loans in the future.

This valuable relief provided by the Settlement was secured with the assistance of private mediation conducted by retired Magistrate Judge Joel Schneider, which was supplemented by extensive arms'-length negotiations by experienced and informed counsel. The proposed Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate. The Settlement provides for adequate compensation to the class considering the litigation and collection risks, maximizes redemption by automatically paying Class Members instead of requiring them to submit claims, provides for valuable

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA"), attached as Exhibit 1 to the Declaration of Kristi C. Kelly ("Kelly Decl.").

nonmonetary consideration, and ensures that no portion of the settlement fund will revert to CACi. Accordingly, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Classes for settlement purposes only, (3) appoint Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard as Class Representatives (collectively referred to as "Named Plaintiffs"), (4) appoint Kristi Kelly and Andrew Guzzo of Kelly Guzzo, PLC, Leonard A. Bennett and Craig Marchiando of Consumer Litigation Associates, P.C., and Matthew Wessler of Gupta Wessler, PLLC as Class Counsel, (5) appoint Continental DataLogix, LLC as the Settlement Administrator, (6) order that Class Notice be distributed to the Settlement Classes, and (7) schedule a Final Approval Hearing.

CACi does not oppose the relief sought in this Motion.

## II.    BACKGROUND

This litigation arises from alleged violations of state and federal laws related to online short-term loans that carried triple-digit interest rates. In the early 2000s, a company called Think Finance began offering usurious and illegal high-interest loans over the internet to consumers throughout the United States. Often, these loans charged around 400% APR—more than 40 times the legal limit in states like California. Think Finance employed what has now become known as a "tribal lending model." It purported to form three lending entities—called Plain Green, Great Plains Lending, and MobiLoans—under the laws of the Chippewa Cree, Otoe-Missouria, and Tunica-Biloxi tribes, and then claimed that all of the lending done through these entities was immune from federal and state laws under tribal sovereign immunity.

These companies were in fact little more than fronts. Although the tribal entities received a nominal flat fee from the loans, they had no control over the income, expenses, or day-to-day operations of the business. That control was instead retained by Think Finance, which for nearly eight years operated the entire enterprise and reaped virtually all the profits from the illegal lending operation.

Beginning in 2013, however, Think Finance's lending enterprise unraveled. Federal and state regulators independently brought enforcement actions against the companies, alleging that Think Finance and its affiliates ran a common enterprise designed to offer and collect online installment loans that violated state usury laws. *See, e.g., Commonwealth of Penn. v. Think Fin., Inc.*, 2016 WL 183289, at *1 (E.D. Pa. Jan. 14, 2016). And the operation also faced several private enforcement actions as well. *See, e.g., Gingras v.*

1    *Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019); *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901 (E.D. Va.

2    2019), *aff'd*, 967 F.3d 332 (4th Cir. 2020); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955 (N.D. Cal. 2019);

3    *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518 (E.D. Va. 2018).

4            In 2019, Think Finance resolved most of this litigation in a landmark settlement. As part of that

5    settlement, Think Finance and its lenders agreed to (1) repay more than $53 million in cash, and (2) forgive

6    more than $380 million of debt owed by consumers who took out loans with these lenders. *See generally*

7    ECF 141, Order, *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019) (granting final

8    approval of the class settlement). In addition to wiping out the debts owed "by more than one million

9    people across the country," the settlement also required the lenders to "promise[] to remove all mention of

10   those loans—most of them technically in default—from borrowers' credit reports." David Rees, *Historic*

11   *settlement sees online lenders wiping out $380 million in debt. Virginians led the way*, The Virginian Pilot (Dec. 12,

12   2019), https://perma.cc/3UTK-HA9Z.

13           Over the course of several years, Named Plaintiffs and the putative Class Members obtained payday

14   loans from one of Think Finance's lenders. But even though these loans were terminated as part of the

15   2019 settlement, CACi continued to attempt to collect them, including from the Named Plaintiffs and

16   putative Class Members. These collection efforts included reporting the debts to consumer-reporting

17   agencies, sending collection letters to consumers, and calling consumers to request payments. And in the

18   case of Rule 23(b)(3) Class Members, CACi collected money for these terminated debts.

19           The Named Plaintiffs alleged that CACi's conduct violated several laws, including the Fair Debt

20   Collection Practices Act, the Rosenthal Fair Debt Collection Practices Act, and California's Consumer

21   Credit Reporting Agencies Act. CACi has denied the Named Plaintiffs' allegations and that its conduct

22   violated any laws. CACi has argued that the debts at issue were not covered by the 2019 settlement because

23   they were sold to third-party debt buyers before the settlement and therefore fell outside of the 2019

24   settlement's reach.

25           After the case was filed, the Parties engaged in significant discovery, in which CACi responded to

26   written discovery and produced documents. After the initial production, the parties engaged in significant

27   meet-and-confer efforts, which resulted in supplemental discovery responses and document production by

CACi. This robust exchange of information fully informed the Parties as to each side's litigation positions, and revealed that Named Plaintiffs would face significant difficulties collecting any judgment obtained in a class-action case because of CACi's limited assets and insurance policy. This discovery also demonstrated that, although CACi collected approximately $314,000 from the putative class members, it paid about $160,000 of this money to the company that actually owned the accounts, Reel Time Capital, LLC. This also limited CACi's ability to make a larger cash payment in settlement or to pay any judgment. The Parties engaged in settlement discussions, and after several months of negotiations, attended a private mediation supervised by retired Magistrate Judge Schneider. After concessions by both sides, the Parties reached a settlement in principle, which was leter memorialized in the attached Settlement Agreement.

The Settlement Agreement provides important injunctive and monetary relief to Class Members, while recognizing the significant difficulties that Named Plaintiffs would have faced collecting a class-action judgment. Although Class Counsel was certainly prepared to continue to litigate rather than accept a settlement that was not in Named Plaintiffs' and the Settlement Classes' best interests, Class Counsel was focused on CACi's ability to pay, which may have ultimately led to the Class Members receiving even less money than the Settlement provides because the litigation of the case through trial would have exhausted the available insurance money. That this was a reasonable strategic decision by Named Plaintiffs is further supported by the fact that settlement was negotiated under the supervision and with the assistance of retired Magistrate Judge Schneider and was conducted by experienced class counsel.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs and CACi now seek preliminary approval of the proposed class action settlement and present this memorandum in support of their Motion. Specifically, the Parties request that the Court preliminarily and conditionally certify the proposed Classes and preliminarily approve the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement, a copy of which is attached as Exhibit A-1-C. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Classes have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the Court.

III.    **THE SETTLEMENT AGREEMENT**

The Settlement encompasses two classes, two sets of consideration, and substantially different releases. The first class, the Rule 23(b)(2) Settlement Class, provides injunctive relief for all consumers were the subject of CACi's collection attempts in the form of policy changes that ensure that CACi will no longer attempt to collect these debts from them in the future. Rule 23(b)(2) Settlement Class Members will receive these benefits without releasing any individual claims that they may have against CACi. The second class, the Rule 23(b)(3) Settlement Class, will include around 500 consumers who, for a release of all claims, are entitled to a payment from a $436,041 Settlement Fund. They will receive these payments automatically, without having to submit a claim form or any other documentation, and payments will be based on the amount that they paid to CACi for the illegal Great Plains, Plain Green, and Mobiloan debts.

A.    **The Rule 23(b)(2) Settlement Class.**

1.    **The Rule 23(b)(2) Settlement Class obtains significant injunctive relief in exchange for a narrow release.**

As described above, discovery and the Parties' early settlement discussions revealed that it would be impossible for CACi to pay the approximately 46,790 consumers who had been the subject of CACi's collection attempts a meaningful cash settlement based on CACi's limited assets and insurance coverage. CACi also produced evidence of an extremely low net worth, meaning that any FDCPA statutory damage award would have been essentially zero. *See* 15 U.S.C § 1692k(a)(2)(B) (limiting statutory damages in class-action cases to the lesser of $500,000 or one percent of defendant's net worth). The Named Plaintiffs, therefore, focused on obtaining injunctive relief for each of these consumers that would stop the collection efforts on the illegal loans, while reserving their rights to pursue any actual damages that they had incurred.

This negotiation led to CACI agreeing to significant procedure changes. CACi has agreed to provide Class Counsel a full class list for all Rule 23(b)(2) Class Members and Rule 23(b)(3) Class Members that contains their personal identifying information, loan level details, and if any of the Class Members disputed their debts with the consumer-reporting agencies. CACi will also provide an authentication affidavit sufficient under the Federal Rules of Evidence to have the information admitted into evidence at trial against other parties, and in the event that the evidence is challenged, CACi shall cooperate in assisting

the Plaintiffs in authenticating the data. This will aid the Class Members in claims against other entities involved in the collection of these debts, including Reel Time Capital and Experian.

In addition to this class list, CACi will stop all collection, including credit reporting, for any MobiLoan, Great Plains, or Plain Green loans and has agreed to implement this change even before the Settlement's Effective date. CACi will also agree to screen any of these loans from its current debt portfolios to make sure that they do not attempt to collect any of these debts in the future. And CACi has agreed that if, in the future, if a consumer notifies CACi that the debt it is seeking to collect from them arises from a Great Plains, Plain Green, or MobiLoan debt, CACi will, after a reasonable investigation and conclusion that the debt is in fact a Great Plains, Plain Green, or MobiLoan debt, cease all collection efforts for that account. This injunctive relief stops the conduct that led to this litigation and will prevent similar harm from occurring again.

The Settlement Agreement defines the Rule 23(b)(2) Settlement Class Members as:

> All persons located in the United States (1) for whom CACI contacted in an attempt to collect a debt or communicated credit information about to Experian, Equifax, or Trans Union; (2) arising from a debt where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; (3) within one year prior to the filing of this action.

(Agreement at 2.25.) This is the same class contained in the operative Complaint, and it contains approximately 46,790 consumers, but the injunctive relief will benefit even more consumers going forward. And in exchange for this significant injunctive relief, the Rule 23(b)(2) Class Members will give a narrow release. As detailed in Sections 2.27 and 4.6 of the Settlement Agreement, Rule 23(b)(2) Class Members are only releasing their ability to bring a class claim under any state or federal laws for the claims asserted in the complaint or claims related to the conduct alleged in the Complaint—CACi's collection attempts regarding the defaulted Great Plains, Plain Green, or MobiLoan debts, including the reporting of those debts to the consumer reporting agencies. Class Members retain the right to bring any individual claims seeking their actual, statutory, or punitive damages, as well as their attorneys' fees and costs.

### 2.    Class Administration and Rule 23(b)(2) Notice Plan.

While individual notice is not required for a class certified under Federal Rule of Civil Procedure 23(b)(2), the Settlement provides for it anyway. The Parties and the Settlement Administrator have developed an appropriate and reasonable Rule 23(b)(2) Notice Plan to provide notice to Rule 23(b)(2) Settlement Class Members before the final approval hearing. (Agreement § 4.2.) CACi will pay for this notice process. (Agreement at 4.2.8.) CACi will also pay for the notice required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. (Agreement § 4.2.8.)

The Agreement proposes that the Court appoint Continental DataLogix as Settlement Administrator for the Rule 23(b)(2) Settlement. Named Plaintiffs selected Continental DataLogix after submitting bids to three class administrators. Each class administrator submitted a bid within the notice parameters of the settlement agreement—*i.e.*, email notice, followed by mailed notice to class members without email address or with returned emails, creation and maintenance of a website, and a toll-free number for class members to call and ask questions. Continental DataLogix submitted the most cost-efficient bid, so was selected as administrator. Continental DataLogix also has robust procedures for securely handling class member data and maintains insurance for errors. (Kelly Decl. Ex. 2.) Continental DataLogix is charging $14,307 to administer the Rule 23(b)(2) Settlement.

Section 4.2 of the Agreement sets forth the Parties' plan for providing notice to Rule 23(b)(2) Settlement Class Members. CACi is paying for the notice plan, and will also send the CAFA notice at its own expense. (Agreement §§ 4.2.4; 4.2.8.)

CACi will prepare the Rule 23(b)(2) class list. (*Id.* § 4.2.1.) After Preliminary Approval, Continental DataLogix will send individual email notice to all Rule 23(b)(2) Settlement Class Members on the Class List. (*Id.* § 4.2.2.) For any Rule 23(b)(2) Class Members who do not have email addresses or whose email notice is returned as undeliverable, Continental DataLogix will send a mail notice to the last known physical address reflected in the Class List, unless Continental DataLogix locates a more recent address for the Class Member by cross-checking the Class List against the National Change of Address Database and other publicly available databases for obtaining up-to-date mailing addresses. Continental DataLogix will also re-mail the Mail Notice if it receives address change notifications from the U.S. Postal Service.

Continental DataLogix will also prepare and publish the Rule 23(b)(2) Class Settlement Website. (*Id.* § 4.2.5.) The Rule 23(b)(2) Class Settlement Website will post important settlement documents, like the Settlement Agreement, the Rule 23(b)(2) Class Notice, and the Preliminary Approval Order, as approved by the Parties or as may be ordered by the Court. (*Id.*) It will also describe the proposed injunctive relief, contain a section for frequently asked questions, and procedural information about the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached. *Id.*

The Rule 23(b)(2) Settlement Website will also detail how a Rule 23(b)(2) Settlement Class Member can object to the Settlement under the Settlement Agreement.

### 3. Class Counsel is Not Seeking Attorneys' Fees or a Service Award for Representation of the Rule 23(b)(2) Settlement Class.

The injunctive relief that Class Counsel achieved for the 23(b)(2) Settlement Class will prevent any future harm to the Rule 23(b)(2) Class Members and provides the Class Members with relief than neither the Court nor a jury could provide even after Plaintiff's best day at trial.[2] As discussed above, the injunctive relief is significant because it requires CACi to stop reporting information about these debts to the consumer reporting agencies, to stop collection efforts on these debts, and to screen any future portfolios to make sure that it does not seek to collect any Great Plains, Plain Green, or MobiLoan debts from consumers in the future. And, of course, as with any class settlement that they negotiate, Class Counsel will incur significant time in the future monitoring the settlement, speaking with class members, and possibly litigating any breaches of the injunctive relief. Class Counsel, however, are not seeking any attorneys' fees or service award for the Rule 23(b)(2) Settlement.

### B. The Rule 23(b)(3) Settlement Class.

#### 1. The Rule 23(b)(3) Class Settlement provides a significant cash payment to Class Members.

The Rule 23(b)(3) Settlement Class includes:

---

[2] It is generally accepted that the FCRA does not provide injunctive relief. *See, e.g.*, *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525, 526 (E.D. Va. 1998).

All persons located in the United States (1) for whom CACI collected payment from a consumer; (2) in connection with an account where the original creditor of the loan was either Plain Green, Great Plains, or MobiLoans; (3) within one year prior to the filing of this action. Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

This class is different from the one that is listed in the operative Complaint because it is meant to identify the individuals who suffered concrete actual damages when they paid CACi for the illegal Great Plains, Plain Green, and MobiLoan debts. The Rule 23(b)(3) Class includes 503 consumers. Each of these consumers will receive a payment from the $436,041 Settlement Fund. The Rule 23(b)(3) Settlement Class Members will receive a payment from the fund automatically, without needing to submit a claim form or any other documentation. The payments will be based on the amount that each consumer paid to CACi for the Great Plains, Plain Green, and MobiLoan debts. If, after the payment of attorney's fees and costs, class notice and administration, and service awards, the fund is not sufficient to provide each class member with a full refund, then each Class Member's payment will be reduced by a pro rata amount. If the full amount of the requested service awards and attorney's fees and costs are awarded, then each Rule 23(b)(3) Class Member's payment would be reduced by less than $40.

If there are uncashed checks 90 days after they are mailed to Rule 23(b)(3) Class Members, the uncashed funds will be redistributed to the Class Members who cashed their original checks, on a pro rata basis. Any uncashed or undeliverable checks after this second mailing will be paid to Public Justice as *cy pres* award to support the protection of consumers relating to the claims alleged in the Litigation. Public Justice is a is a nonprofit legal advocacy organization whose core strategic goal is to effect systemic change for social, economic, and environmental justice. Public Justice collaborates with grassroots advocates, community organizations, and attorneys serving the public interest to help advocate for a number of issues, including consumer issues like the ones the class members faced in this case. No part of the settlement fund will revert to CACi.

**2.      Rule 23(b)(3) Settlement Class release.**

Sections 2.30 and 4.6 of the Settlement Agreement contain the release that Rule 23(b)(3) Settlement Class Members are providing to the Released Parties. The release includes claims that were brought in the litigation, could have been brought in the litigation, or relate to the "Covered Conduct" detailed in the

Settlement Agreement. It does not include, however, claims separate and unrelated to the Covered Conduct, claims alleged against other entities other than CACi, claims brought under 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act, or for collection conduct for accounts other than Great Plains, Plain Green, or MobiLoan accounts. The Rule 23(b)(3) Settlement Class Released Claims include claims for actual damages, statutory damages, punitive damages, attorneys' fees, and all relief of any kind including claims asserted on a class, mass, or collective action basis and claims asserted on an individual, non-representative basis.

### 3.    Rule 23(b)(3) Settlement Administration and Notice Plan.

The Agreement proposes that Continental DataLogix will also administer the Rule 23(b)(3) Settlement. (Agreement § 4.2.3.) Continental DataLogix was selected using the same bid process detailed above and provided the lowest estimate for class notice. Administration and notice of the Rule 23(b)(3) Class will cost $11,041. Section 4.2 of the Agreement sets forth the Parties' plan for providing notice to Rule 23(b)(3) Settlement Class Members. The costs of the notice plan will be paid out of the Settlement Fund, but CACi will send the CAFA notice at its own expense. (Agreement §§ 4.2.4; 4.2.8.)

CACi will prepare the Rule 23(b)(3) class list. (*Id.* § 4.2.1). After Preliminary Approval, Continental DataLogix will send individual email notice to all Rule 23(b)(3) Settlement Class Members on the Class List. (*Id.* § 4.2.2.) For any Rule 23(b)(3) Class Members who do not have email addresses or whose email notice is returned as undeliverable, Continental DataLogix will send a mail notice to the last known physical address reflected in the Class List, unless Continental DataLogix locates a more recent address for the Class Member by cross-checking the Class List against the National Change of Address Database and other publicly available databases for obtaining up-to-date mailing addresses. Continental DataLogix will also re-mail the Mail Notice if it receives address change notifications from the U.S. Postal Service.

Continental DataLogix will also prepare and publish the Rule 23(b)(3) Class Settlement Website. (*Id.* § 4.2.5.) The Rule 23(b)(2) Class Settlement Website will post important settlement documents, like the Settlement Agreement, the Rule 23(b)(2) Class Notice, and the Preliminary Approval Order, as approved by the Parties or as may be ordered by the Court. (*Id.*) It will also describe the proposed cash payments, contain a section for frequently asked questions, and procedural information about the status of the Court-

approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payments are expected to be mailed. (*Id.*)

Both the Rule 23(b)(3) Notice and the Rule 23(b)(3) Settlement Website will include information on how Rule 23(b)(3) Settlement Class Members may opt out of or object to the Settlement. Anyone wishing to opt out of the Rule 23(b)(3) Class Settlement must follow the procedures set out in Section 4.4 of the Settlement Agreement, including submitting their request no later than 90 days after the Notice Date. (*Id.* § 4.2.2.) Continental DataLogix will maintain a list of all valid opt-out requests. (*Id.* § 4.4.3.)

Any Rule 23(b)(3) Settlement Class Member wishing to object to the Settlement must follow the procedures in Section 4.5 of the Settlement Agreement. Objections must be filed with the Court at least thirty dates before the Final Fairness Hearing. (Agreement § 4.5.1.) Unrepresented objectors' notice of objection must include the Class Member's name, address, and telephone number; the name of this litigation, the case number, and a written statement detailing the specific basis for each objection. (*Id.* § 4.5.2.) Objectors represented by counsel must also the identity, mailing address, email address, fax number, phone number for the counsel representing the Class Member; a statement of whether the objecting class member intends to appear at the Final Fairness Hearing; and a written statement detailing the specific basis for each objection, including any legal and factual support, including any evidence, that the objecting class member wishes to bring to the Court's attention. (*Id.* § 4.5.3.) The Parties have agreed not to provide any payments to any person or counsel who files an objection in exchange for the withdrawal, dismissal, or release of the objection, except with approval of the Court. (*Id.* § 4.5.5.)

**4.    Attorneys' fees and Service Awards for representation of the Rule 23(b)(3) Settlement Class.**

Named Plaintiffs and Class Counsel will ask the Court to approve the attorneys' fees and service award in the Settlement Agreement. The attorneys' fees and service awards were addressed in mediation only after the Parties had agreed to all other substantive elements of the Settlement. The Settlement Agreement provides that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses of up to 25% of the Rule 23(b)(3) Settlement Fund. (Agreement § 5.3.) Class Counsel

1    will submit its fee petition to the Court at least 35 days before the Rule 23(b)(3) Settlement Class objection

2    deadline. (*Id.*) The Settlement Agreement also permits each Named Plaintiff to apply for a $5,000 Service

3    Award. (*Id.* § 5.4.) Again, the Parties' agreement on attorneys' fees, costs, and service award did not occur

4    until after the substantive terms of the Settlement Agreement had been reached.

5    **IV.    LEGAL STANDARDS FOR PRELIMINARY APPROVAL.**

6        The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See In re Syncor*

7    *ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th

8    Cir. 1992). The settlement of complex cases greatly contributes to the efficient utilization of scarce judicial

9    resources and achieves the speedy provision of justice. Federal Rule of Civil Procedure 23 requires court

10   approval of a class action settlement, a decision that is committed to the sound discretion of the trial judge.

11   FED. R. CIV. P. 23(e); *see also In re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000) (recognizing that the

12   trial judge is "exposed to the litigants, and their strategies, positions, and proof"). "[To] approve a class

13   action settlement under Rule 23, a district court must conclude that the settlement is 'fundamentally fair,

14   adequate, and reasonable.'" *Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2019 WL 387322,

15   at *4 (N.D. Cal. Jan. 30, 2019).

16       "Approval of a class action settlement requires a two-step process—a preliminary approval

17   followed by a later final approval." *Behfarin v. Pruco Life Ins. Co.*, No. CV 17-5290-MWF-FFMx, 2019 WL

18   7188575, at *5 (C.D. Cal. Nov. 26, 2019) (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal.

19   2016)). Preliminary approval is appropriate where the "proposed settlement appears to be the product of

20   serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

21   preferential treatment to class representatives or segments of the class, and falls within the range of

22   possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161, 2014 WL 360196, at *10 (C.D. Cal.

23   Jan. 31, 2014). Courts in this District generally consider at preliminary approval whether a proposed

24   settlement is both procedurally and substantively fair and reasonable. *See, e.g.*, *Behfarin*, 2019 WL 7188575, at

25   *6. The question for the Court is whether the settlement is "within the range of reasonableness." *Ma*, 2014

26   WL 360196, at *10.

27

Courts in the Ninth Circuit consider specific factors when approving a settlement. *See e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Avina v. Marriott Vacations Worldwide Corp.*, No. SACV18685JVSJPRX, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019). These factors include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill.*, 361 F.3d at 575; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In addition, courts must scrutinize fee arrangements for potential collusion or unfairness to the class, such as those where plaintiffs' counsel receives a disproportionate distribution of the settlement or where the agreement contains reverter clauses to distribute remaining funds back to defendants rather than to the class. *See Briseno v. Henderson*, 998 F.3d 1014, 1026-28 (9th Cir. 2021).

Rule 23, as amended in 2018, provides additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. *See* FED. R. CIV. P. 23(e)(3). Those factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided is adequate; and (D) whether the proposed settlement treats class members equitably relative to each other. Plaintiff will address the factors relevant to both standards, many of which overlap, but taken together, support preliminary approval here.

## V.    ARGUMENT AND AUTHORITIES.

### A.    The Proposed Settlement Warrants Preliminary Approval.

The Settlement, which was reached in the absence of collusion and is the result of good faith, informed, arms'-length negotiation between competent counsel, in conjunction with an experienced retired Magistrate Judge as mediator, satisfies the standard for preliminary approval in the Ninth Circuit and under Rule 23. *See Hanlon*, 150 F.3d at 1026; FED. R. CIV. P. 23(e). The settlement with CACi was reached only after significant written discovery and document production. The Parties engaged in meaningful meet-and-confer efforts, which led to CACi's production of additional documents and information. This discovery

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - Case No. 3:21-cv-03266-VC

13

was sufficient such that both Parties were informed as to the case's strengths and weaknesses at the mediation. This supports the conclusion that the posture of the action and the discovery conducted was such that the proposed settlement is fair, reasonable, and adequate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims are meritorious and that they would prevail if this case proceeded to trial. CACi has denied any liability and raised several defenses that could pose a risk if the case were to proceed to trial. The only thing that is now certain is that if this case continues, the Settlement Class Members will need to wait much longer before receiving any recovery. In Class Counsel's experience and informed judgment, the benefits of settling with CACi outweighed the risks and uncertainties of continued litigation and post-judgment collection efforts, as well as the attendant time and expenses associated with the same. (Kelly Decl. ¶¶ 14–18.)

### 1. The Settlement is the product of good-faith, informed, arms'-length negotiations.

The Ninth Circuit puts "a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Pub'lg Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see* FED. R. CIV. P. 23(e)(2)(B). A presumption of fairness applies when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval. *See, e.g.*, *Maine State Ret. Sys. V. Countrywide Fin. Corp.*, No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013) (citing *Newberg on Class Actions*, § 11.41 (4th ed. 2013)). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *see also Coborst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011)("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness.").

Here, the Settlement is the result of a private mediation with retired Magistrate Judge Schneider, supplemented by intensive, arms'-length negotiations between experienced attorneys who are familiar with the legal and factual issues in this Action, as well as class action litigation generally. (*See* Exs. A, B, C.) This

settlement was reached after significant discovery was completed, with multiple meet-and-confer conferences and supplemental discovery production. There can thus be little doubt that each side knew well the strengths and weaknesses of their respective positions. The Parties' vigorous negotiation of the claims in this action, with the involvement of an experienced mediator, evidences an absence of collusion and the presence of fairness and good faith.

In addition to these facts, the Settlement passes muster under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), which identifies the indicia of collusion that courts must look for when a class action settles prior to class certification. *See id.* at 947. Unlike the claims-made settlements in *Bluetooth* and *Briseno*, this settlement here is a true common fund. Because of that, Settlement Class Members are receiving cash benefits and valuable non-monetary relief, without having to take any action to receive those benefits. In addition, Class Counsel intend to seek an award of attorneys' fees and costs well within the range of reasonableness that is based on the common fund amount, not their lodestar. There is no reversionary component: under no circumstances will any funds be returned to CACi. The absence of indicia of collusion under *Bluetooth* provides further evidence that the Settlement is non-collusive and fair.

### 2.   The Settlement is fair, adequate, and reasonable.

A preliminary review of the relevant factors supports the conclusion that the Settlement falls within the "range of reason" such that the Court should preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule a Final Approval Hearing. The Ninth Circuit has adopted the following eight-factor test for determining whether a settlement is fair, reasonable, and adequate:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

*Russell v. Kohl's Dep't Stores, Inc.*, 755 Fed. App'x 605, 608 (9th Cir. 2018) (quoting *Hanlon*, 150 F.3d at 1026). While the Class Members cannot react to the settlement until after notice goes out, the Court can "properly consider[] the *Hanlon* factors in deciding that the settlement [i]s fair, reasonable, and adequate" at the preliminary approval stage. *See Russell*, 755 Fed. App'x at 608 (affirming district court's review of *Hanlon* factors in preliminary approval order).

a. **The strengths and risks of Plaintiffs' case and likely duration of further litigation.**

The Settlement is fair, reasonable, and adequate in light of the strengths and risks of Plaintiffs' case and likely duration of further litigation. In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

While confident in the strength of Plaintiffs' claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation. (*See* Kelly Decl. ¶ 15.) Indeed, CACi was prepared to argue that the loans at issue in this litigation were not covered by the Great Plains, Plain Green, and MobiLoan settlement. CACi also raised other substantive arguments, including that it had relied on the owner of the debts to verify that the loans were valid. Although Named Plaintiffs were confident that they would overcome these defenses, they recognized that they did pose a litigation risk were the case to proceed.

And even if Plaintiffs are ultimately successful at a trial on their claims, there is uncertainty on appeal. *See, e.g., Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 340 (4th Cir. 2017) (vacating a class judgment of approximately $12 million and dismissing the case); *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.1979) (reversing $87 million judgment after trial); *Trans World Airlines*, 409 U.S. 363 (1973) (reversing $145 million judgment after years of appeals and on a theory that defendant had not raised, or argued). Even if Named Plaintiffs were successful on appeal, it would cause a several-year delay in distributing relief to Class Members. The Settlement avoids these risks and provides real and meaningful relief to the Settlement Classes now.

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Classes, the Settlement provides immediate relief. *Rodriguez*, 563 F.3d at 966, *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903 TEH, 2008 WL

4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). It is thus "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.,* No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

These factors thus favor preliminary approval.

### b.     The amount offered in settlement.

The Common Fund of $436,041 is also a reasonable and fair recovery for the Rule 23(b)(3) Class given the risk associated with further litigation and collection, as well as the strategic considerations Class Counsel had to take into account when determining the best possible case to try before a jury. Notably, CACi provided evidence during the course of mediation of limited capital that is unlikely to satisfy a judgment if Plaintiffs were to prevail in full. (Kelly Decl. ¶ 15.) Additionally, while class members could recover actual damages under the FDCPA, their statutory damages were limited to the lesser of $500,000 or one percent of net worth. CACi had produced evidence that its net worth was de minimis, and therefore, the Settlement Classes faced the possibility of a very limited recovery even if they made it all the way to trial and win. The dual nature of this Settlement—injunctive relief for all Class Members, and a cash payment to those Class Members who made payments to CACi—is meant to reflect and acknowledge the real risk that Named Plaintiffs faced if they had proceeded to trial. And, as explained above, the Rule 23(b)(3) Settlement Class Members are likely to receive close to a full refund of the amounts that they paid

to CACi for these illegal loans. *See, e.g.*, *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable . . . .").

### c.    The allocation of the Settlement.

The allocation of the Settlement to the Rule 23(b)(3) Settlement Class Member is also fair and reasonable, and the manner of administrating relief will be effective. Payments will be made *pro rata* based on the amount that each Rule 23(b)(3) Settlement Class Member paid to CACi for the defaulted debts. This method is consistent with the distribution of common funds in other cases. *See, e.g.*, *Lloyd v. Navy Federal Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 2269958, at *3 (S.D. Cal. May 28, 2019) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Walters v. Target Corp.*, No. 3:16-cv-1678-L-MDD, 2019 W 6696192 (S.D. Cal. Dec. 6, 2019) (same); (Kelly Decl. ¶ 12 (listing cases where similar distribution method was made in settlement)). A *pro rata* distribution means that Rule 23(b)(3) Settlement Class Members who paid more towards the defaulted debts will receive a relatively larger share of the Settlement Fund, and those who paid less will receive less. This allocation treats Settlement Class Members equitably because they are compensated according to the amount that they paid. *See* Fed. R. Civ. P. 23(e)(2)(D).

The proposed method of distributing relief is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator, who will automatically mail checks to the Rule 23(b)(3) Settlement Class Members, after running their addresses through the National Change of Address database. Rule 23(b)(3) Class Members are not required to submit a claim form, or any documentation at all, to receive their payment from the Settlement Fund.

### d.    The extent of discovery completed and stage of proceedings.

The extent of discovery completed and the stage of proceedings certainly favor preliminary approval. This case was settled after significant discovery had been completed, including a supplemental production after a robust meet-and-confer process. Plaintiffs had thus conducted sufficient discovery to

permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement.

### e.    The views of Class Counsel.

Class Counsel's view is that this Settlement is a good, fair, and reasonable recovery for the Settlement Class, particularly in light of strategic considerations pertaining to trial and ability to pay concerns. (Kelly Decl. ¶ 18.) Class Counsel is experienced in class action litigation, including cases concerning illegal tribal lending. (*See* Exs. A, B, C.) A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports preliminary approval.

### f.    Government participant and Class Member reaction.

There is no government participant and, because the Court has not yet approved the Class Notice, the Settlement Class has not had an opportunity to react, so these factors are neutral. *See Hillman*, 2017 WL 10433869, at *8.

### 3.    The Class Representatives and Class Counsel have adequately represented the proposed Classes.

Under Rule 23(e)(2)(A), the Court should also consider whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See Avina*, 2019 WL 8163642, at *6. Here, the Class Representatives have adequately represented the Settlement Classes. They do not have any conflicts with the proposed classes and have adequately represented the class in this litigation by, *inter alia*, producing documents, regularly communicating with their counsel about the litigation, and participating in the settlement process. (Kelly Decl. ¶¶ 30–31.)

Class Counsel has also adequately represented Settlement Class Members. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases, including with respect to the factual and legal issues in this case. (Exs. A, B, C.) Indeed, Class Counsel has reached multiple settlements with numerous corporate and individual defendants that were involved in

Think Finance's tribal lending enterprise, obtaining over $850 million in cash and debt relief on behalf of consumer borrowers nationwide. Class Counsel also has significant experience litigating other payday lending cases, as well as cases involving loans and other financial services and fees more broadly. (*Id.*)

In negotiating the Settlement Agreement, Class Counsel thus had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other similar cases. (Kelly Decl. ¶¶ 9–12.) This understanding of the intricacies of the "rent-a-tribe" lending model prepared Class Counsel to fight this Action to a successful conclusion if necessary, but also equipped Class Counsel with the tools and perspective to appreciate the benefits of the instant settlement. (*Id.*)

### 4. The proposed Fee and Expense Award is fair and reasonable.

Finally, the terms of the proposed award of attorneys' fees and costs are also fair. *See* FED. R. CIV. P. 23(e)(2)(c)(iii). Class Counsel will file a separate motion seeking approval of their attorneys' fees and costs in an amount not to exceed twenty-five percent of the Settlement Fund, which is in line with the amount that this District generally uses to evaluate attorneys' fee awards in common fund cases. *See, e.g.*, *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (upward departure from 25% acceptable); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (approving attorneys' fees of one-third of the settlement fund).

The reasonableness of the requested award is also supported by Class Counsel's incurred lodestar. As noted in the attachments to the Bennett and Kelly Declarations, Counsel's combined lodestar is currently approximately $124,785. That number will likely increase as the settlement process unfolds, with Counsel spending additional time on tasks common in class action settlements—answering questions of Class Members, discussing notice or other issues with the settlement administrator, and the like. Even if Counsel's lodestar remains the same, assuming the Court grants the planned requested fee of 25% of the common fund, $109,010.25, Class Counsel's lodestar multiplier will be negative because their lodestar eclipses the proposed fee.

Class Counsel will also seek Service Awards for each of the Named Plaintiffs in the amount of $5,000, which Plaintiffs respectfully submit is reasonable and fair, and well within the range of approval for class action settlements. *See, e.g.*, *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL

708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)); *Hickcox-Huffman v. U.S. Airways, Inc.*, No. 10-cv-05193, 2019 WL 1571877, at *2 (N.D. Cal. April 11, 2019) (approving service award of $10,000); *Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205, 2019 WL 1589980, at *4 (N.D. Cal. April 12, 2019) (approving service award of $10,000).

As discussed above, neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested attorneys' fees and costs or Service Award.

### B. Certification of the Settlement Classes is appropriate.

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1). The Settlement Classes meet all of the requirements of FED. R. CIV. P. 23(a), (b)(2), and (b)(3).

### 1. The Settlement Classes Meet the Requirements of Rule 23(a).

The Settlement Classes easily meet Rule 23(a)'s numerosity requirement. The Rule 23(b)(2) Settlement Class includes approximately 46,790 Class Members, and the Rule 23(b)(3) Settlement Class includes approximately 503 Class Members. Joinder of these many members for either class is a logistical impossibility. *See, e.g., Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (same).

The Settlement Classes also satisfy the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, again, the proposed Settlement Classes easily satisfy the commonality prerequisite as all Settlement Class Members' claims originate from the same conduct of CACi. For the Rule 23(b)(2) Settlement Class, all class members were subjected to the same credit reporting and collection efforts regarding the illegal Great Plains, Plain Green, and MobiLoan debts. And for the Rule 23(b)(3) Settlement Class, all Members paid money towards the same illegal loans. The theories of

liability as to all Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* FED. R. CIV. P. 23(a).

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 537 (N.D. Cal. 2015) (typicality was met where the named plaintiffs, like class members, were all charged for marked-up broker price opinions by mortgage company). Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011). Here, as with the commonality requirement, Named Plaintiffs' claims are typical of the claims of Settlement Class Members because they arise from the same course of events and alleged conduct by, *inter alia*, CACi. In this respect, Named Plaintiffs and Settlement Class Members are all in the same boat as consumers who were subject to CACi's collection efforts; and the only genuine difference from one member to another is the level of financial harm incurred. Consequently, in seeking to prove their claims, the proposed Class Representatives will necessarily advance the claims of Settlement Class Members. (*See* ECF 164 at 9–10.)

Finally, the adequacy requirement is satisfied where the class representative will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1020); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, the Named Plaintiffs have no conflicts of interest with other class members, and they and their counsel will and have vigorously prosecuted this case on behalf of the class. (*See* Kelly Decl.) The Named Plaintiffs understand and have accepted the obligations of a class representative; they have adequately represented the interests of the putative class throughout the course of this litigation; and they have retained experienced counsel who have handled numerous consumer protection class actions. Class Counsel has effectively handled numerous consumer protection and complex class actions, typically as lead or co-lead counsel. (*See* Exs. A, B, C.) Accordingly, the Settlement Class is adequately represented to meet Rule 23's requirements.

**2.    The Rule 23(b)(2) Settlement Class satisfies the requirements of Rule 23(b)(2).**

Class certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

For the Rule 23(b)(2) Settlement Class, Plaintiff alleges that CACi's practices and procedures failed to satisfy the Fair Debt Collection Practices and the California law. The Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members the same because it gives each Settlement Class Member the same substantial benefits of the injunctive relief practice changes discussed above. While CACi maintains that it has always acted in compliance with the law, the fact that the Settlement modifies CACi's conduct for the Rule 23(b)(2) Settlement Class as a whole makes it appropriate for certification under Rule 23(b)(2). *Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (citation omitted)). The injunctive relief will provide a direct benefit to the Rule 23(b)(2) Settlement Class Members going forward because the policy changes enacted through the Rule 23(b)(2) settlement will make it less likely that the class members are subject to CACi's attempted collection of the Plain Green, Great Plains, and MobiLoan debts.

The Rule 23(b)(2) Settlement Class also meets Rule 23(b)(2)'s second requirement—that any request for monetary relief be merely "incidental" to the injunctive relief provided in the settlement—because the Settlement does not provide for monetary relief for Rule 23(b)(2) Settlement Class Members unless they are also members of the Rule 23(b)(3) Settlement Class. Rule 23(b)(2) Settlement Class Members retain their ability to bring individual claims for actual damages, statutory damages, punitive damages, and attorneys' fees, and release only their ability to bring a class action for the limited "covered conduct" listed in the Settlement Agreement.

### 3. The Rule 23(b)(3) Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

As to the Rule 23(b)(3) Settlement Class, common questions predominate over any questions affecting only individual members here: any individual differences in loan terms or collection methods for example, "are not material to the claims asserted," which "are all based on the theory that a usurious or otherwise illegal rate of interest was charged." *Brice v. Haynes Invs., LLC.*, No. 18-CV-01200-WHO, 2021 WL 1916466, at *5 (N.D. Cal. Apr. 23, 2021) Thus, such "discrete issues do not undermine predominance." *Id.* Rather, common questions based on the standardized conduct of CACi—*i.e.*, whether its collection of the illegal Great Plains, Plain Green, or MobiLoan debts violated the law—can be resolved using the same evidence for all class members. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)." (citation and quotation marks omitted)).

Class certification here is also "superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with

modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

## C. **The Court Should Approve The Proposed Notice Plan.**

### 1. **The proposed notice plan is adequate and warrants preliminary approval.**

Rule 23(e)(1) requires that the court "direct notice is a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). The manner of the settlement notice need only comply with due-process "reasonableness" requirements, which will vary based on the circumstances of the case. *See Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979). Here, because the Settlement contains both Rule 23(b)(2) and Rule 23(b)(3) relief, there are two standards that the Court should consider in evaluating the proposed notice plan.

First, neither Rule 23 nor caselaw requires individualized, mailed notice for a Rule 23(b)(2) settlement class, where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement. Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice. FED. R. CIV. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(l) or (2), the court may direct appropriate notice to the class."). Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a (b)(2) class, as individual damage claims are not at stake. *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir.2003), overruled on other grounds in *Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571 (9th Cir.2010), *rev'd, Dukes,* 131 S.Ct. 2541; 7B Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive"); FED. R. CIV. P. 23 advisory committee's note (2003

Amendments) (explaining that "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be exercised with care" because there is no right to request exclusion and because of the potentially "crippl[ing]" cost of providing notice).

For the Rule 23(b)(3) Settlement Class, a more rigorous—but still flexible—standard applies. Rule Advisory Committee Notes to FED. R. CIV. P. 23, 39 F.R.D. 69, 107 (mandatory notice under subdivision (c)(2) "is designed to fulfill requirements of due process to which the class action procedure is of course subject"). The Court must direct "the best notice that is practicable under the circumstances" to a Rule 23(b)(3) class, which includes "individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Thus, where the names and addresses of individual class members are available or can be found without imposing an excessive burden or cost, due process requires that those class members receive direct notice. The content of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Regardless of the different standards, the Notice Plan is adequate for both Settlement Classes. Even though Rule 23(b)(2) does not require it, the Settlement provides Rule 23(b)(2) Class Members with the direct, individual notice plan that is used for the Rule 23(b)(3) Class Members. To accomplish the contemplated Class Notice, the Settlement Administrator will send direct notice to all Class Members by e-mail at their last-know email address. For any email addresses that are returned as undeliverable, or for Class Members who do not have an email address, the Settlement Administrator will mail a copy of the notice to the Class Member's address, which will be checked against the USPS's national change of address database. In addition to individual Direct Notice, the Settlement Administrator will establish the Settlement Website, which will include the Notice and other important case documents. And a toll-free telephone number will be available to Settlement Class Members with questions. The operative notice plan is the best notice practicable and is reasonably designed to reach Settlement Class Members.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-03266-VC

26

The Ninth Circuit has approved class notice in the form of email notice. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding notice satisfied due process and Rule 23(e) where an initial email notice was supplemented by a postcard notice to those whose emails bounced back). Indeed, more and more, courts—including this one—are embracing the use of electronic mail as a means of providing notice, just as Plaintiffs propose here. *See Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) (discussing use and adequacy of email notice in context of final approval of settlement); *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2021 WL 134889, at *1 (N.D. Cal. Jan. 14, 2021) (discussing plan whereby "notices will be sent directly to all known members of the Class 1) via email for all class members for whom an email address is available"); *Chalian v. CVS Pharmacy, Inc.*, No. CV 16-08979 AB (AGRx), 2020 WL 7414739, at *2 (C.D. Cal. Nov. 20, 2020) (ordering corrective notice sent by email to class members for whom email addresses are available); *see also Browning v. Yahoo! Inc.*, C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) (email notice sent to all available addresses, with a hard copy mailing sent to anyone who did not have an email address on file or where the email was returned as undeliverable); *In re Online DVD Rental Antitrust Litigation*, No. 09-md-02029 (N.D. Cal. Aug. 29, 2011) (direct email notice to all settlement class members, followed by direct notice by standard U.S. Mail to members whose emails bounced back upon up to three attempts at email delivery).

The Settlement's robust notice and administration plan will ensure the maximum number of Class Members will receive notice of the Settlement and the payments to which they are entitled. Moreover, there is no claim form, and the substance of the notice will fully apprise Class Members of their rights. Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F. 3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 962 (9th Cir. 2009)) (alteration in original). The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the settlement website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This information undoubtedly provides "sufficient detail" to allow class members with adverse

viewpoints to conduct further investigation and "come forward to be heard." *Lane,* 696 F.3d at 826 (holding the sufficient detail standard "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims"). Accordingly, this notice program satisfies Rule 23(e) and should be approved.

## VI.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) enter the Preliminary Approval Order; (3) appoint the Named Plaintiffs as Class Representatives; (4) appoint Kristi Kelly and Andrew Guzzo of Kelly Guzzo, PLC, Leonard A. Bennett of Consumer Litigation Associates, P.C., and Matthew Wessler of Gupta Wessler, PLLC as Settlement Class Counsel; (5) direct that Notice be distributed to the Settlement Classes in substantially the form included with this Motion; (6) approve the appointment of Continental DataLogix as the Settlement Administrator; and (7) and schedule a Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of this Motion.

Dated: April 21, 2023

Respectfully submitted,

By:    */s/ Craig C. Marchiando*

Craig C. Marchiando, Esq., (SBN 283829)
Leonard A. Bennett, Esq., (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Matthew Wessler (pro hac vice)
Gupta Wessler PLLC
2001 K Street, NW

Suite 850 North
Washington, DC 20006
Telephone: 202-888-1741
E-mail: matt@guptawessler.com

*Attorneys for Plaintiffs and the Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-03266-VC

29