Craig C. Marchiando, Esq. (SBN 283829)
Leonard A. Bennett, Esq. (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (*pro hac vice*)
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELETTRA MEEKS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC.; et al., <br><br> Defendants. | Case No.: 3:21-cv-03266-VC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: Nov. 9, 2023 <br> Time: 1:00 p.m. <br> Judge: Vince Chabbria <br><br> Date Filed: May 3, 2021 <br> Trial Date: None set |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **November 9, 2023 at 1:00 p.m.**, or as soon thereafter as this matter may be heard, by videoconference before the Honorable Vince Chabbria, Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard respectfully move this court to finally approve the

---

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-03266-VC

Settlement reached in this case, the terms of which are more specifically described in the accompanying Memorandum and Points of Authority filed in support of this Motion.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declarations of Leonard Bennett, Kristi Kelly, and Matthew Wessler and exhibits thereto, the pleadings and papers on file in this Action, and any other such evidence and argument as the Court may consider. Defendant Consumer Adjustment Company, Inc. ("CACi") does not oppose this Motion.

Dated: October 19, 2023

Respectfully submitted,

By: _/s/ Craig C. Marchiando_

Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Matthew Wessler (pro hac vice)
Gupta Wessler PLLC
2001 K Street, NW
Suite 850 North
Washington, DC 20006
Telephone: 202-888-1741
E-mail: matt@guptawessler.com

*Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................... **ERROR! BOOKMARK NOT DEFINED.**

II. BACKGROUND ............................................................................................................ 2

III. THE ADMINISTRATOR SUCCESSFULLY EXECUTED THE NOTICE PLAN ....................... 4

IV. CACI SENT THE NOTICE REQUIRED BY THE CLASS ACTION FAIRNESS ACT ............ 5

V. LEGAL STANDARDS FOR FINAL APPROVAL ............................................................... 5

VI. ARGUMENT AND AUTHORITIES .................................................................................. 6

    A. Upon Consideration Of The Pertinent Factors, The Proposed Settlement Warrants Final Approval .................................................................................. 6

        1. The Class Representatives and Class Counsel have adequately represented the Classes ............................................................................ 6

        2. The Settlement was negotiated at arm's length ................................... 7

        3. The Settlement benefits are more than adequate ................................ 8

        4. All Class Members are treated alike, without favoring anyone ........... 9

        5. Government participation and Class Member reaction ..................... 10

    B. The *Bluetooth* Factors Likewise Favor Final Approval ................................. 11

VII. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Anixter v. Home–Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .................................................................................................. 7

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir.1979) ....................................................................................................... 7

*Churchill Village, LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................................... 5

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................................... 5

*Custom LED, LLC v. eBay, Inc.*,
   No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ...................................... 8

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................... 11

*Dreher v. Experian Info. Sols., Inc.*,
   856 F.3d 337 (4th Cir. 2017) ..................................................................................................... 7

*Ebarle v. Lifelock, Inc.*,
   No. 15-cv-00258-HSG, 2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) .................................. 12

*Edwards v. Andrews*,
   846 F. App'x 538 (9th Cir. 2021) .............................................................................................. 5

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................... 5

*Franco v. Ruiz Food Prod., Inc.*,
   No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .................................. 7

*Gibbs v. Plain Green, LLC*,
   No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019) ................................................................................ 3

*Griffith v. Providence Health & Servs.*,
   No. C14-1720-JCC, 2017 WL 1064392 (W.D. Wash. Mar. 21, 2017) ................................... 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 5, 6, 11

*Hughes Tool Co. v. Trans World Airlines, Inc.*,
   409 U.S. 363 (1973) ................................................................................................................... 7

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................................. 11, 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -   ii
Case No. 3:21-cv-03266-VC

*In re High-Tech Employee Antitrust Litigation*,
    2015 WL 5158730 (N.D. Cal. Sep. 2, 2015) .................................................................. 12

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................................ 11

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 5

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................ 11

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ............................. 12

*Kumar v. Salov N. Am. Corp.*,
    No. 14-cv-2411-YGR, 2017 WL 2902898(N.D. Cal. July 7, 2017),
    *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ...................................................................... 10

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................................... 5

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ............... 12, 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................... 5

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .......................................................................................... 5

*Roberts v. AT&T Mobility LLC*,
    No. 15-cv-03418-EMC, 2021 WL 9564449 (N.D. Cal. Aug. 20, 2021) ..................... 10

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................ 12

*Smith v. Am. Greetings Corp.*,
    No. 14-cv-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016) ....................... 12

*Spann v. J.C. Penney Corp.*,
    No. SA CV 12-0215 FMO (KESx), 2016 WL 5844606 (C.D. Cal. Sept. 30, 2016) ... 12

*Tadepalli v. Uber Techs., Inc.*,
    No. 15-cv-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ....................... 12

*Zepeda v. PayPal, Inc.*,
    No. C 10-1668 SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) .......................... 10

**S**TATUTES

California's Consumer Credit Reporting Agencies Act ........................................................................ 3

Fair Debt Collection Practices Act ........................................................................ 3

Rosenthal Fair Debt Collection Practices Act ........................................................................ 3

**R**ULES

FED. R. CIV. P. 23(e) ........................................................................ *passim*

## I. INTRODUCTION

Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard, individually and on behalf of the proposed Settlement Classes,[1] seek final approval of a proposed Settlement of claims against Defendant Consumer Adjustment Company, Inc. ("CACi"). The Court held a hearing on Plaintiff's Motion for Preliminary Approval on June 1, 2023, approved the proposed settlement, and ordered notice to be sent to Class Members. (ECF 119.) Nothing has changed since the Court's initial approval of the Settlement. The Class Members have been notified of the particulars of the Settlement and the relief it provides, and one has objected and none have requested exclusion. The process envisioned by Rule 23 has therefore run its course, and nothing in that process raises questions about the propriety of the Court's grant of preliminary approval nor the appropriateness of final approval of the Settlement.

The relief Class Members will receive upon approval is significant. The Settlement Agreement will create a $436,041 Common Fund and will resolve the claims of Plaintiffs, the Rule 23(b)(2) Settlement Class Members, and the Rule 23(b)(3) Settlement Class Members deriving from CACi's alleged violations of state and federal law through its collection of certain defaulted debts stemming from defaulted Great Plains, Plain Green, and MobiLoan debts. The Common Fund will provide cash payments to Rule 23(b)(3) Settlement Class Members, as well as pay for notice and administration costs, and any award of attorneys' fees and costs and Service Awards that the Court may approve. Settlement Class Members do not need to submit a claim form or any other documentation to receive their monetary compensation, which will be distributed *pro rata* according to the amount that they paid toward the defaulted debts. Class Members will receive about 95% of their money back.

Separately from the cash relief the Common Fund provides, the Settlement also includes important and valuable nonmonetary consideration to Rule 23(b)(2) Class Members in the form of cooperation by CACi in providing an authenticated class list that can be used against other parties involved in the

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA"), filed on the docket at ECF 113-1, beginning at page 11 in the header attached by the Clerk upon filing.

1  collection of or credit reporting about these debts; an agreement to stop its collection efforts regarding the
2  debts; and an agreement to screen any future loan portfolios it purchases so that it does not attempt to
3  collect similar illegal loans in the future.

4  This valuable relief was secured through private mediation conducted by retired Magistrate Judge
5  Joel Schneider, which was supplemented by extensive arms'-length negotiations by experienced and
6  informed counsel. The proposed Settlement warrants final approval, as the terms remain fair, reasonable,
7  and adequate. The Settlement provides adequate compensation to the class considering the litigation and
8  collection risks, maximizes redemption by automatically paying Class Members instead of requiring them to
9  submit claims, provides for valuable nonmonetary consideration, and ensures that no portion of the
10 settlement fund will revert to CACi. Accordingly, Plaintiffs request that the Court (1) finally approve the
11 proposed Settlement and enter the proposed Order Granting Final Approval (ECF 113-1 at 75); (2) enter
12 the agreed Injunctive Relief Order (ECF 113-1 at 84); (3) award Plaintiffs' and Class Counsel's requested
13 attorneys' fees and Class Representative Service Awards; and (4) dismiss Plaintiff's and Class Members'
14 claims with prejudice.

15 CACi does not oppose the relief sought in this Motion.

## II. BACKGROUND

17 This litigation arises from alleged violations of state and federal laws related to online short-term
18 loans that carried triple-digit interest rates. In the early 2000s, a company called Think Finance began
19 offering usurious and illegal high-interest loans over the internet to consumers throughout the United
20 States using three entities, Plain Green, Great Plains Lending, and MobiLoans. Often, these loans charged
21 around 400% APR—more than 40 times the legal limit in states like California. Think Finance employed
22 what has now become known as a "tribal lending model," whereby lenders pair themselves with Native
23 American Tribes, create lending entities under the tribes' authority, yet remain in nearly total control of the
24 lending operation. The lender then claims that all of the lending done through these entities is immune
25 from federal and state laws under tribal sovereign immunity.

26 When regulators and consumer lawyers closed in, Think Finance collapsed. It resolved most of the
27 litigation against it in 2019, in a landmark settlement. That settlement involved cash payments to

consumers and cancellation of more than $380 million in consumer debts. As part of that settlement, Think Finance and its lenders agreed to (1) repay more than $53 million in cash, and (2) forgive more than $380 million of debt owed by consumers who took out loans with these lenders. *See generally* ECF 141, Order, *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019) (granting final approval of the class settlement). Removal of the debts from consumers' credit reports was also a term of the Think Finance settlement.

Named Plaintiffs and the putative Class Members obtained payday loans from one of Think Finance's lenders. But even though these loans were terminated as part of the 2019 settlement, CACi continued to attempt to collect them, including from the Named Plaintiffs and putative Class Members. These collection efforts included reporting the debts to consumer-reporting agencies, sending collection letters to consumers, and calling consumers to request payments. And in the case of Rule 23(b)(3) Class Members, CACi collected money for these terminated debts.

The Named Plaintiffs alleged that CACi's conduct violated several laws, including the Fair Debt Collection Practices Act, the Rosenthal Fair Debt Collection Practices Act, and California's Consumer Credit Reporting Agencies Act. CACi has denied the Named Plaintiffs' allegations and that its conduct violated any laws. CACi has argued that the debts at issue were not covered by the 2019 settlement because they were sold to third-party debt buyers before the settlement and therefore fell outside of the 2019 settlement's reach.

After the case was filed, the Parties engaged in significant discovery, in which CACi responded to written discovery and produced documents. After the initial production, the parties engaged in significant meet-and-confer efforts, which resulted in supplemental discovery responses and document production by CACi. This robust exchange of information fully informed the Parties as to each side's litigation positions, and revealed that Named Plaintiffs would face significant difficulties collecting any judgment obtained in a class-action case because of CACi's limited assets and insurance policy. This discovery also demonstrated that, although CACi collected approximately $314,000 from the putative class members, it paid about $160,000 of this money to the company that actually owned the accounts, Reel Time Capital, LLC. This also limited CACi's ability to make a larger cash payment in settlement or to pay any judgment. The Parties

engaged in settlement discussions, and after several months of negotiations, attended a private mediation supervised by retired Magistrate Judge Schneider. After concessions by both sides, the Parties reached a settlement in principle, which was later memorialized in the attached Settlement Agreement.

The Settlement Agreement provides important injunctive and monetary relief to Class Members, while recognizing the significant difficulties that Named Plaintiffs would have faced collecting a class-action judgment. Although Class Counsel was certainly prepared to continue to litigate rather than accept a settlement that was not in Named Plaintiffs' and the Settlement Classes' best interests, Class Counsel was focused on CACi's ability to pay, which may have ultimately led to the Class Members receiving even less money than the Settlement provides because the litigation of the case through trial would have exhausted the available insurance money. That this was a reasonable strategic decision by Named Plaintiffs is further supported by the fact that settlement was negotiated under the supervision and with the assistance of retired Magistrate Judge Schneider and was conducted by experienced class counsel.

## III. THE ADMINISTRATOR SUCCESSFULLY EXECUTED THE NOTICE PLAN.

After the Court's grant of preliminary approval, CACi provided Continental DataLogix with the class lists. (ECF 122 ¶¶ 3, 7.) Continental processed the lists to determine and eliminate duplicate entries, established which members had email addresses and, for those who did not, ran the lists against the National Change of Address Database to ensure current mailing addresses. (*Id.* ¶¶ 4–5, 8.) After the initial mailing and remailing of notices returned as undeliverable, Continental estimates that that notice was delivered to 98.7 percent of members of the Rule 23(b)(2) Settlement Class, and 96.8 percent of members of the Rule 23(b)(3) Settlement Class. (*Id.* ¶ 12.)

Continental also set up and operated the Settlement website and toll-free telephone line dedicated to the Settlement. (*Id.* ¶ 13.) The website contained important case-related documents, and the phone line fielded 67 calls. (*Id.* ¶ 14.)

Response to the Settlement by Class Members has been strong. They were informed of the Settlement's terms and benefits, instructed on how to object and exclude themselves, and told of the

amounts Plaintiffs would request for attorneys' fees and Service Awards. No Class Member formally objected to any aspect of the Settlement, and none opted out. (Ex. 1, Marchiando Decl. ¶¶ 3–7.)[2]

## IV. CACi SENT THE NOTICE REQUIRED BY THE CLASS ACTION FAIRNESS ACT.

CACi completed the process of mailing the notice required by the Class Action Fairness Act on May 12, 2023. (ECF 123) No government official has objected or raised any issues with the Settlement. (*Id.* ¶¶ 5–6; Ex. 1, Marchiando Decl. ¶ 8.)

## V. LEGAL STANDARDS FOR FINAL APPROVAL.

A class action may be settled only with the Court's approval. FED. R. CIV. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

In conducting its analysis, the Court should be mindful that the Ninth Circuit favors the compromise and settlement of class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. Ultimately, the decision to approve a class action settlement falls within the Court's discretion. *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *8 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021).

---

[2] As explained in the attached Declaration of Craig C. Marchiando, one Class Member—Natalie Taylor—contacted Continental DagaLogix by email and lodged a generic objection. (Ex. 1, Marchiando Decl. ¶¶ 3–7.) Plaintiffs' Counsel attempted to contact Ms. Taylor three times to discuss the substance of her objection, but were unable to reach her. (*Id.* ¶¶ 5–6.) Plaintiffs' Counsel is therefore unsure of the genuine reasons for her objection, but nonetheless address it below.

The Court's final-approval analysis requires the balancing of several factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e).

## VI. ARGUMENT AND AUTHORITIES.

Here, the Court has considered all of the Rule 23(e) factors already, owing to its practice to conduct a "review of the Settlement at preliminary approval [that] is not cursory, it is as rigorous as will be conducted at the final approval stage." (ECF 119 ¶ 2.) Nothing is different now, and nothing has happened since the Court's grant of preliminary approval should cause it to question that decision. Plaintiff therefore briefly recaps the *Hanlon* factors and addresses the sole objection in the discussion below.

### A. Upon Consideration Of The Pertinent Factors, The Proposed Settlement Warrants Final Approval.

#### 1. The Class Representatives and Class Counsel have adequately represented the Classes.

Nothing can meaningfully be said that this factor is not met. Plaintiffs and their Counsel maintain confidence in the strength of their case, but at the same time are also pragmatic and recognize the risks inherent in litigation. Discovery and settlement discussions revealed that CACi planned to argue that the loans at issue in this litigation were not covered by the Great Plains, Plain Green, and MobiLoan settlement, so attempting to collect them was entirely appropriate. Plaintiffs faced additional resistance from CACi, including arguments that it had relied on the owner of the debts to verify that the loans were

valid. Although Named Plaintiffs were confident that they would overcome these defenses, they simultaneously recognized the risk to their case these defenses posed.

The relief attained here is significant. Class Members will receive nearly all money they paid to CACi back, and will be assured that these loans will not appear on their credit files again. While there is always the ability to refuse to settle and continue to litigate in hopes of a better recover, Plaintiffs and their Counsel also know that success at a trial can be short-lived, as there is genuine uncertainty on appeal. *See, e.g., Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 340 (4th Cir. 2017) (vacating a class judgment of approximately $12 million and dismissing the case); *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (reversing $145 million judgment after years of appeals and on a theory that defendant had not raised, or argued). And even if Named Plaintiffs were successful on appeal, it would cause a several-year delay for the relief to make it to Class Members. The Settlement avoids these risks and provides real and meaningful relief to the Settlement Classes almost immediately. *See Franco v. Ruiz Food Prod., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *12 (E.D. Cal. Nov. 27, 2012) (noting that "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

Moreover, the Classes have received notice of the Settlement, and no one made a substantive comment about any shortcomings by Plaintiffs or their Counsel. Without any genuine reason to doubt that the representation has been adequate, the Court should conclude that it was. This factor thus favors final approval.

### 2. The Settlement was negotiated at arm's length.

There is likewise nothing to undermine the integrity of the negotiation process. The Parties negotiated the settlement through private mediation conducted by retired Magistrate Judge Joel Schneider, and followed-up those discussions extensive, contentious negotiations by experienced and informed counsel. There is no suggestion of collusion, and the lack of it is further evidenced by Class Counsel not

seeking fees tied to the injunctive relief and the fees they do request are eclipsed by their lodestar such that a negative multiplier results.

### 3. The Settlement benefits are more than adequate.

The Common Fund of $436,041 is a reasonable and fair recovery for the Rule 23(b)(3) Class given the risk associated with further litigation and collection, as well as the strategic considerations Class Counsel had to consider when determining the best possible case to try before a jury. As set forth above, there are meaningful risks in continuing to litigate, including losses on class certification (or a ruling of decertification), surviving a Rule 23(f) petition, holding certification through trial, prevailing at trial, and then defending the verdict on appeal. All of these events require effort and resources, and a loss on any by Plaintiffs means no recovery for the Classes.

Notably, CACi provided evidence during settlement talks of limited capital to satisfy a judgment if Plaintiffs were to prevail in full. Additionally, while class members could recover actual damages under the FDCPA, their statutory damages were limited to the lesser of $500,000 or one percent of CACi's net worth. CACi had produced evidence that its net worth was *de minimis*, and therefore, the Settlement Classes faced the possibility of a very limited recovery even if they made it all the way to trial and won. The dual nature of this Settlement—injunctive relief for all Class Members, and a cash payment to those Class Members who made payments to CACi—is meant to reflect and acknowledge the real risk that Named Plaintiffs faced if they had proceeded to trial. And, as explained above, the Rule 23(b)(3) Settlement Class Members are likely to receive close to a full refund of the amounts that they paid to CACi for these illegal loans. *See, e.g.*, *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *Custom LED, LLC v. eBay, Inc.,* No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable . . . .").

The allocation of the Settlement to the Rule 23(b)(3) Settlement Class Member is also fair and reasonable, as all Class Members are treated equally in how the relief is distributed. In essence, Class Members will receive a return of approximately 95% of the money they paid to CACi on the defaulted loans, making them nearly whole. And they need not lift a finger to obtain that relief—it will arrive

automatically within a few weeks following final approval. While class action settlements are never either settling side's best day in court, the cash recovery here is meaningful and equitable because it gives Class Members their money back. While not the very best that Plaintiffs could have done with a total victory at trial, the benefit here is certain fair and reasonable such that final approval remains appropriate.

The above discussion confirms that the notice plan has been successful. Nearly all Class Members received notice, and there have been no indications of any systemic failures in the process that caused a group of Class Members to not have received notice. Since nearly everyone knew the terms of the Settlement and only one has commented, this factor supports final approval.

As explained in Plaintiffs' Motion for Attorneys' Fees (ECF 121), this is not an instance where counsel seeks a windfall fee and the class gets little. Class Counsel's proposed fee is less than their accumulated lodestar, resulting in a negative multiplier. Class Counsel negotiated attorneys' fees after agreeing on the terms of the settlement. (ECF 121-1 ¶ 29.) Again, there can be no genuine claim that attorneys' fees were somehow attained at the expense of Class Members.

Finally, there are no agreements under Rule 23(e)(3) to identify.

In sum, all of these factors favor granting final approval to the Settlement.

### 4. All Class Members are treated alike, without favoring anyone.

Members of the Rule 23(b)(2) Settlement Class are all receiving identical relief—elimination of the Tribal loans from their credit files, and an agreement by CACi that it will not take on any such loans in the future. This is true, meaningful relief, and accomplishes one of Plaintiffs' major goals in bringing this litigation.

The Rule 23(b)(3) Settlement Class will receive cash relief, amounting to approximately 95% of the amount they paid to CACi when it contacted them to collect on the Tribal loans. Awards of attorneys' fees reduce the recovery slightly, but that reduction is distributed *pro rata* across Class Members in proportion to the amount of money they paid CACi. (ECF 117-1.) Class Member payments will be distributed automatically, without Class Members having to perform any act, after the Effective Date of the Settlement. This near-identical treatment of Class Members under the Settlement further supports a grant of final approval.

### 5. Government participant and Class Member reaction.

Though not mentioned as a factor under Rule 23(e), Class Counsel believes it should inform the Court regarding governmental participants and Class Member reaction to the Settlement. CACi sent the notice required by the Class Action Fairness Act to all state and Washington D.C. attorneys general on May 12, 2023. (ECF 123 ¶ 3.) None of these officials voiced any objection to nor commented on the terms of the Settlement (Ex. 1, Marchiando Decl. ¶ 8), which the Court may consider as positive support for the Settlement. *See Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC, 2021 WL 9564449, at *3 (N.D. Cal. Aug. 20, 2021) (addressing multiple factors as supporting final approval, including the absence of a government objector following CAFA notice).

As noted above, Class Member reaction to the Settlement could not be much better. No one excluded themselves, and a sole, non-substantive objection is the only opposition to the Settlement (if it can even be considered such). That objection, sent just to the Administrator rather than by the Court-ordered process for submission (*see* ECF 119 ¶ 18), contains none of the substantive requirements for a valid objection and makes only the bland statement "I received a letter and object to this settlement. They broke the law." (Ex. 1, Marchiando Decl. ¶ 4.) While these shortcomings are sufficient for the Court to overrule this objection out of hand, (ECF 119 ¶ 18), Plaintiffs nevertheless address it on the merits as well.

Courts in this Circuit generally agree that objections to class action settlements that are devoid of substance cannot serve to overturn an otherwise valid, appropriate settlement. *See,* e.g., *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *18 (N.D. Cal. Mar. 24, 2017) (overruling objections that "fail[ed] to identify any specific flaws in the Settlement that render it unfair, inadequate or unreasonable"); *Griffith v. Providence Health & Servs.*, No. C14-1720-JCC, 2017 WL 1064392, at *3 (W.D. Wash. Mar. 21, 2017) finding that an objection just "to the fairness and reasonableness of the settlement" did not "provide a basis for denying settlement approval"). Ms. Taylor's objection presents a textbook lack of substance. Part of the point of objections is to focus the Parties and Court on potential shortcomings in a settlement, so that the settlement may be revised, discussions revisited, or the settlement rejected as unfair. *See Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411-YGR, 2017 WL 2902898, at *3 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (overruling as irrelevant in the final-approval analysis objection that did "not

speak to the substance of the settlement agreement terms"). Without some meaningful explanation of the reasons for her opposition, Ms. Taylor's objection offers the Court no basis on which to agree it supports rejecting the Settlement. The Court should therefore overrule the objection on the merits as well.

### B. The *Bluetooth* Factors Likewise Favor Final Approval.

In addition to the analysis from *Hanlon*, the Ninth Circuit requires that when a settlement agreement is negotiated before a grant of class certification over defendant's opposition, courts must also satisfy themselves that the settlement did not result from collusion among the parties. *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)). Thus, the Court must examine the settlement for three potential "warning signs" of collusion: "(1) whe[ther] class counsel receives a disproportionate distribution of the settlement, or [ ] the class receives no monetary distribution but counsel is amply awarded[;] (2) whe[ther] the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by the defendant . . . [;] and (3) whe[ther] the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund." *Destefano*, 2016 WL 537946, at *9. Even where one or more of the signs exists, however, "the presence of these factors is in no way dispositive." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015), (granting final approval to this settlement despite the presence of two of *Bluetooth*'s three warning signs). Instead, "the *Bluetooth* factors are merely 'warning signs' that indicate the *potential* for collusion" and "the Court is merely obligated to assure itself that the fees awarded in the agreement were not unreasonably high in light of the results obtained for class members." *Id.* (emphasis in original).

Here, the first factor—whether Class Counsel receives a disproportionate distribution of the settlement—cannot be deemed problematic. In common-fund settlements, the Ninth Circuit sets a "benchmark" fee award at 25% of the recovery obtained. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). That is the amount Plaintiffs seek here, and they do not seek fees relating to the injunctive relief achieved. Plaintiffs' requested fee award here is also eclipsed by their lodestar, further

showing the appropriateness of the requested fee. The Court should therefore conclude this factor does not indicate any potential issues with the Settlement.

The second factor likewise presents no barrier to final approval. Although the Parties' Agreement does contain a "clear sailing" provision, "that does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class.'" *Smith v. Am. Greetings Corp.*, 14-cv-02577-JST, 2016 WL 2909429, at *7 (N.D. Cal. May 19, 2016) (quoting *In re High-Tech Employee Antitrust Litigation*, 2015 WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015)); *see also Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *8 (N.D. Cal. July 11, 2014), appeal dismissed (Nov. 17, 2014) ("Under the second factor, clear sailing provisions generally do not raise concerns where, as here, the fees are to come from the settlement fund"). "The dominant risk with clear sailing provisions is that defendants might persuade class counsel to accept a lower payment to the class in exchange for a promise not to object to a (presumably higher) fee." *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *10 (N.D. Cal. July 7, 2016). So where, like here, Class Counsel's fees will be paid from a common fund and none of any unclaimed money will revert to CACi, the clear-sailing provision presents no concern because CACi is paying the same amount, and getting none back, regardless of the actual dollar award of attorneys' fees. Put differently, such a provision is consistent with CACi's "own interests in minimizing liability," and is not a sign of collusion. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009).

Lastly, the agreement does not include a "kicker" provision that would allow unclaimed funds to revert to CACi. *See, e.g.*, *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016) (noting that "[u]nlike in *In re Bluetooth Headset*, the $68 million fund is nonreversionary" and "[b]ecause there is no 'kicker' contained in the agreement, remaining money in the Settlement Fund does not revert to Defendant and instead is redistributed on a pro rata basis to the Class"); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (KESx), 2016 WL 5844606, at *10 (C.D. Cal. Sept. 30, 2016) (noting that "the entire settlement amount will be distributed, and no funds will revert to defendant"); *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *9 (N.D. Cal. Apr. 25, 2016) ("The absence of a "kicker provision" in the parties' settlement and the fact that the class is receiving 100% of the fees

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-03266-VC

12

incurred reduces the likelihood that the parties colluded to confer benefits on each other at the expense of class members"); *Larsen*, 2014 WL 3404531, at *8 ("As to the third factor, the Settlement Agreement provides that unclaimed fees do not revert to Trader Joe's, but will be distributed to class members through a product distribution in Trader Joe's stores"). Here again, this factor does not raise any issues that should stand in the way of final approval of the Settlement.

## VII. CONCLUSION.

This is an excellent settlement. No one meaningfully disagrees, either by objection or exclusion from the Settlement. The benefits are real and meaningful, and nothing since the Court's grant of preliminary approval supports a reconsideration of that decision. The Court therefore should not.

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) finally approve the Settlement; (2) enter the Final Approval Order; (3) enter the Injunctive Relief Order (4) affirm the appointment of the Named Plaintiffs as Class Representatives and Plaintiffs' attorneys as Class Counsel; (5) grant the requested awards of attorneys' fees and Class Representative Service Awards; and (6) dismiss this action with prejudice.

Dated: October 19, 2023

Respectfully submitted,

By: _____/s/ *Craig C. Marchiando*_____

Craig C. Marchiando, Esq., (SBN 283829)
Leonard A. Bennett, Esq., (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Matthew Wessler (pro hac vice)

Gupta Wessler PLLC
2001 K Street, NW
Suite 850 North
Washington, DC 20006
Telephone: 202-888-1741
E-mail: matt@guptawessler.com

*Attorneys for Plaintiffs and the Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - Case No. 3:21-cv-03266-VC

14